484 So.2d 706 (1986)
CENTRAL METAIRIE CIVIC ASSOCIATION, INC., and Michael Mitchel
v.
The JEFFERSON PARISH COUNCIL, the Parish of Jefferson, Metairie Center Joint Venture, First Gibraltar Mortgage Corporation, and Daniel P. Robinowitz d/b/a Woodmont Development Company.
No. 85-CA-488.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 1986.
*708 William H. Reinhardt, Jr., Kevin W. Kern, Post, Reinhardt & Rougelot, Metairie, for plaintiffs-appellants Cent. Metairie Civic Ass'n, Inc. and Michael Mitchel.
David R. Sherman, Steven E. Hayes, Gauthier, Murphy, Sherman, McCabe & Chehardy, Metairie, for defendants-appellants Metairie Center Joint Venture, First Gibraltar Mort. Corp. and David P. Robinowitz, d/b/a Woodmont Development Co.
Hubert A. Vondenstein, Parish Atty., Byrne W. Dyer, III, Asst. Parish Atty., Gretna, for defendant-appellee Parish of Jefferson.
Before KLIEBERT, CURRAULT and GRISBAUM, JJ.
KLIEBERT, Judge.
This is a devolutive appeal by the plaintiffs-appellants, Central Metairie Civic Association, Inc. (CMCA) and Michael Mitchel (Mitchel), from a judgment of the district court in favor of defendants, the Parish of Jefferson (Parish), Metairie Center Joint Venture, First Gibraltar Mortgage Corporation and Daniel Rabinowitz, d/b/a Woodmont Development Company (hereinafter referred to collectively as "Developer"), dismissing CMCA's suit for injunctive relief and a declaratory judgment holding Ordinance No. 16148 of the Parish of Jefferson invalid. For the reasons which follow, we affirm.
Developer had acquired a tract of land located on the east bank of Jefferson Parish, bounded by West Napoleon Avenue on the south, Interstate 10 on the north, the Gatehouse Apartment complex on the east, and various lots on the west. The property was bisected by Metairie Lawn Drive north to south from I-10 to West Napoleon Avenue and across the south half by 36th Street.
Developer filed with the Parish an application to resubdivide its property and to have the portion of Metairie Lawn Drive and 36th Street bisecting its property abandoned. The request was assigned Summary Ordinance No. 13168, and a public hearing on the application was held before the Council on July 11, 1984. Several opponents appeared at the hearing, testified they were using the streets in question and opposed its abandonment. The Jefferson *709 Parish Director of Public Works, Michael Lavelle, recommended that the resubdivision and revocation of dedication not be granted. The Council then voted 6 to 1 to deny the application.
On July 15, 1984, Developer filed another request to approve the resubdivision and the revocation of the prior dedication. The application was similar to the previous one and was assigned Summary Ordinance No. 13217. Notice was published in three newspapers having a general circulation in the Parish of Jefferson that the Ordinance had been introduced and its final adoption would be considered at the Council meeting on August 22, 1984.
At the Council hearing held on August 22, 1984, opponents were permitted to submit evidence in support of their contentions, but were not permitted to submit evidence on the impact the construction on the property would have on the surrounding area. Parish Department heads and/or employed consultants testified as to their views. The Council adopted Summary Ordinance No. 13217 as Ordinance No. 16148 by a 5 to 2 vote.
On September 7, 1984, CMCA filed a petition praying for a declaratory judgment holding Ordinance No. 16148 null, void and without effect and for a mandatory injunction compelling the Parish of Jefferson to re-open and maintain the abandoned streets. After the denial of a motion for summary judgment, the case was tried on February 25, 26 and 27, 1984 and, on March 7, 1985, the trial judge rendered judgment dismissing CMCA's suit based on his findings that the Parish Council adhered to the enabling statutes and did not act arbitrarily and capriciously in enacting Ordinance No. 16148.
Ordinance No. 16148 authorized an exchange of property between the Parish of Jefferson and the Developer. To effect the exchange the Ordinance (1) revoked the dedication of two lanes, 26 foot wide sections, of 36th Street and Metairie Lawn Drive which bisected the Developer's commercial tract and, thus, under R.S. 48:711, vested ownership of the abandoned roadways to the bordering landowners, i.e., the Developer; (2) approved a plan of resubdivision incorporating the two parcels together with the roadways into one parcel; and (3) obligating the Developer to rearrange utility services and to provide a public servitude and to construct and maintain thereon, at its expense, a four-lane public roadway approximately 150 feet west of abandoned Metairie Lawn Drive.
The appellants consolidated some of their eighteen assignments of error for the purpose of arguments. We consider the appellants' contention the trial judge erred in refusing to grant them a suspensive appeal and their following argued reasons why the Ordinance should be invalidated, in the order argued by appellants but under the captions indicated:
(1) The Ordinance was invalid as a matter of law because the Council failed to adhere to the requirements of the enabling acts in giving the required notice of the proposed revocation of the street dedication.
(2) The Parish Council acted arbitrarily and capriciously in granting the Developer's application for a revocation of the prior street dedication and a resubdivision because its members failed to inform themselves or were misinformed and therefore failed to recognize the impact the construction of the Galleria would have on the traffic and utility services in the area and to heed the substantial evidence submitted by the plaintiffs showing the streets were in fact being used, had not been abandoned, and were needed for public purposes.
(3) The revocation of the prior dedication of the public streets was a prohibited donation of public property or alternatively an exchange of public property for other property of a lesser value.
(4) The resubdivision of the property violated Chapter 33 of the Code of Ordinances under the captions indicated.
*710 We first consider the appellants' contention itemized above as No. (1).

Adequacy of Notice
The enabling statute for Ordinance No. 16148 is LSA-R.S. 48:711, et seq. The first section, R.S. 48:711 confers on any Parish having a population in excess of 325,000 citizens (which Jefferson Parish has) the authority to dispose of streets no longer needed for public use. The subsequent section, R.S. 48:712, stipulates four methods by which such disposition may be made, including ".... (4) exchange of any type of property for other property of approximately equal value." LSA-R.S. 48:713 provides for the public notification of the intended alienation as follows:
§ 713. Disposal of immovable property
The governing authority of the parish shall adopt an ordinance after advertising a summary of said ordinance in the official journal of the parish once a week for three consecutive weeks declaring that the property is no longer needed for public purposes and authorizing its disposition by one of the four methods prescribed in R.S. 48:712.
The notice published by the Council on August 2, 9 and 21, 1984, in three newspapers of general circulation in Jefferson Parish, including the official journal, was as follows:

NOTICE
Notice Is Hereby Given that the Jefferson Parish Council has introduced an ordinance in summary, Summary No. 13217, at the Council Meeting held on July 25, 1984, the purpose of which is to revoke the dedications of Metairie Lawn Drive and a portion of 36th Street located in Parcel E all as more fully shown on the plan of J.J. Krebs & Sons, Inc., Engineers, Planners and Surveyors, dated April 12, 1984. Said ordinance will also approve the resubdivision of the resulting lots in accordance with said plan, a copy of which is available at the Planning Department, Room 300, Thomas F. Donelon Building, 3330 North Causeway Boulevard, Metairie, Louisiana.
The aforesaid ordinance will come up for final adoption at the Meeting of the Jefferson Parish Council to be held in the Council Chamber, Second Floor, New Courthouse Building, Gretna, Louisiana on Wednesday, August 22, 1984 at 10:00 A.M.
Any questions regarding this ordinance should be directed to the Planning Department, Room 300, Thomas F. Donelon Building, 3330 North Causeway Boulevard, Metairie, Louisiana.
 Dolores H. Gonzales,
 Parish Clerk
 Jefferson Parish Council
Appellants contend the notice failed to meet the requirements of LSA-R.S. 48:713 because the words "no longer needed for public purpose" were not included in the notice. Hence, they argue the Ordinance is invalid because of the Council's failure to comply with the notice requirements of the enabling statute. They point to a letter by an Assistant Parish Attorney dated September 23, 1973, advising the Council the language is essential to revoke the dedication of a public street, as support for their contention.
The attorney's letter was advisory. It was not legal precedence and had no binding effect on the Council. Additionally, as we view LSA-R.S. 48:713, for the reasons which follow, its purpose and intent was to give the public notice by publication of the intent of the governing authority to dispose of public immovable property. Consequently, we do not agree with appellants' argument.
LSA-R.S. 48:711, et seq., were enacted to provide an additional method for parishes to dispose of public property which was no longer needed. As originally enacted, no public meeting was necessary and public notice was mandated only when the property was to be disposed of for cash at public auction. In 1970, Act 648, Section 1 of the 1970 Legislature, amended the statute to require publication of notice once *711 a week for three consecutive weeks followed by a public hearing before adoption of the Ordinance disposing of the property. Subsequently, Section 1 of Act No. 417 of the 1972 Legislature was amended to its present form, thus deleting the requirement of a public hearing. Thus, in our view, the intent of R.S. 48:711 is to give public notice, in the legal sense, of an intended disposition of public property. Notice, in the legal sense, is dissemination of information sufficient to put someone on inquiry. If, through the use of reasonable means, full information could be obtained, the person who fails to use available resources to gain full knowledge is charged with notice of all the facts. In Dugas v. Powell, 207 La. 316, 21 So.2d 366 (La.1945) at page 373, the supreme court said:
"This Court said, in the case of Maxwell v. W.B. Thompson & Co., 175 La. 252, 143 So. 230, 233, that `notice, in its accepted legal sense, means such information on the part of the person charged with notice as would put a prudent person on inquiry to ascertain the true or actual facts,' and in the case of National Park Bank v. Concordia Land & Timber Company, 159 La. 86, 105 So. 234, 239 [La.1925], that `notice of facts which ought to excite inquiry, and which, if pursued, would lead to knowledge of other facts operates as notice thereof.' (Italics ours.)
"It is stated in Ruling Case Law, Volume 20, under the title Notice, Section 7, that:
"`Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. * * * Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge.'"
The public notice given here directs any interested person of the sources of additional and more detailed information. Our courts have consistently rejected technical pleas as to sufficiency of notice where the record reflects that the party knew or, with reasonable diligence, should have known a given situation. See Maxwell v. W.B. Thompson & Co., 175 La. 252, 143 So. 230 (1932) and Tyson v. Spearman, 190 La. 871, 183 So. 201 (1938). More recently in Thibodeaux v. Quebodeaux, 282 So.2d 845 (3rd Cir.1973), at page 854, the court again reaffirmed earlier decisions on sufficiency of notice as follows:
"Applicable here also is the rule that notice of facts which ought to excite inquiry and which if pursued would lead to knowledge of other facts operates as notice thereof. Where one who has had sufficient knowledge of the facts to put him on inquiry and fails to inquire, or one who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts, is chargable with all the facts which by a proper inquiry he might have ascertained..."
Based on the number of persons attending the hearing and the opposition of CMCA, which includes a letter of objection to the Council on the date before the hearing, we cannot say the plaintiffs-appellants were not informed or that the notice did not accomplish its intended purpose of putting the public on notice. Additionally, we do not see how the inclusion of the verbage would have increased public awareness of the proposed revocation. The notice published by the Council clearly indicated that the Parish intended to revoke the dedication of the two streets. The use of the word "revoked" in the notice indicates the streets were no longer necessary for public use. Moreover, as we have hereinafter elaborated, a mere examination of the Ordinance shows the purpose of the revocation was to effect an exchange in order to obtain a wider traffic artery in lieu of the old streets; hence, a statement that the old streets were no longer necessary, standing alone, would have been misleading. Accordingly, *712 we affirm the trial court's ruling that the notice satisfied the requirements of LSA-R.S. 48:713.
We next consider appellants' contentions itemized above as (2). According to appellants' counsel, opponents of the resubdivision/revocation Ordinance presented evidence at the Council hearing[1] showing: (1) the streets were not abandoned and were needed for public purposes; (2) the construction of the Galleria would cause a negative sewerage, drainage and traffic impact on the area and the Council refused to allow opponents to present evidence on the impact the construction of the Galleria would have; (3) the action of the Council would have a negative impact on the quality of life and the value of residential properties in the surrounding neighborhood. On the other hand, contend appellants, the evidence submitted by the proponents of the Ordinance was merely a desire on their part to have the resubdivision take place. Therefore, its counsel contends the Council either failed to inform itself or was misinformed and consequently acted arbitrarily and capriciously in enacting Ordinance No. 16148. We consider the arguments under the following headings: (1) Adequacy of the Hearing and (2) Arbitrary and Capricious.

Adequacy of Hearing
Although the enabling statutes do not require a public hearing, the Council gave the opponents of the proposed Ordinance an opportunity to be heard prior to enactment of Ordinance No. 16148. At the commencement of the hearing the Council Chairman announced it would limit testimony and arguments to the effects of the resubdivision and exclude statements or arguments as to the impact the proposed construction of the Galleria on the resubdivision would have on the surrounding area. Also, during the trial in the district court the trial judge repeatedly ruled or expressed the view that evidence as to the impact the proposed construction would have on the area was not material to a decision here. Nevertheless, for the most part, the trial judge admitted in evidence the testimony or documents relative to the impact the proposed construction would have. Hence, appellants contend the Council either failed to inform itself or was misinformed. Further, appellants contend the trial judge erred in refusing to consider the Galleria's impact.
The Second Circuit, in Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (2nd Cir.1960), at page 620, outlined the material facts to be considered in a resubdivision request as follows:
"... the decision in the Caz-Perk Realty case advises that in its deliberations as to whether a street should be closed, a public body should consider as material factors before arriving at a conclusion: the topography of the property surrounding the street in the light of ingress and egress to other streets; the relationship of the street in the road system throughout the subdivision; the problem posed by the "dead end" of the street; the width of the street; the cost of rebuilding and maintaining the street as contrasted to its ultimate value to all of the property in the vicinity; the inconvenience of those visiting the subdivision; and whether the closing of the street would cut off any property owners from access to a street. The aforementioned factors, although not supplying all considerations, nevertheless furnish a fair standard for the determination by a governing body as to whether a street is useful for public purposes and should not be closed.
*713 Moreover, a review of the jurisprudence involving the closing of streets shows the courts consider only the impact of the street closing itself and not the future use of the closed street. See Luneau v. Avoyelles Parish Police Jury, 196 So.2d 631 (3rd Cir.1967); Bonvillain v. Terrebonne Parish Police Jury, 288 So.2d 898 (1st Cir. 1973), and Miller v. Calcasieu Parish Police Jury, 441 So.2d 306 (3rd Cir.1983). In each of these cases, the decision turned on what the Torrance court outlined as material factors a governing authority should consider before the closing of a street.
Mr. Hugh Ford, Jefferson Parish Planning Director, testified that one of his duties was to recommend to the Council approval or disapproval of resubdivision requests. In reaching his recommendation on thousands of applications, he did not consider the impact of construction on the development site. The Parish President also explained that under the organizational setup, the impact caused by development was considered at the time construction permits were applied for.
For the reasons above stated, therefore, coupled with those amplified under the next caption "Arbitrary and Capricious" we cannot say the Council erred in refusing to take evidence on the future use of the resubdivided tract or that the trial judge committed reversible error in refusing to consider the impact of the construction of the Galleria.

Arbitrary and Capricious
Appellants' case and the arguments made here are framed as though the Council hearing is an advocacy proceeding with the Council being charged with the function of deciding the issue between the proponents and opponents of the Ordinance with a right of appeal of the Council's decision to the courts.
In fact, the Council is the body chosen by the people to exercise the legislative function of government which includes the regulatory control of the development and the serving of those developments by providing for traffic movements together with sewerage, water and other public services. It has a wide discretion in the exercise of its authority and courts should not interfere with the functions delegated to legislative bodies unless they abuse that power by acting so arbitrarily and capriciously as to infringe on the constitutionally protected rights of others. Caz-Perk Realty, Inc. v. Police Jury of East Baton Rouge Parish, 207 La. 796, 22 So.2d 121 (1945). Although interested citizens may challenge in the court system the abuse of that power, the courts require the challenger to allege and carry the burden of proving an abuse occurred. See Favrot v. Jefferson Parish Council, 470 So.2d 286 (5th Cir.1985) and Miller v. Calcasieu Parish Police Jury, supra.
The purpose of Ordinance No. 16148 was to effectuate the relocation of the developed two-lane Metairie Lawn Drive, which then provided access between West Napoleon Avenue and I-10 Service Road, to a location one hundred fifty feet away, which would eliminate former dead-end streets which were causing garbage disposal problems, and provide four-lane access between I-10 Service Road and West Napoleon Avenue. Since the Council had the authority to effectuate a property exchange, LSA-R.S. 48:718, the methodology chosen was to couple a revocation of the prior dedicated streets with an obligation on the landowner to provide, free of cost to the Parish, a four-lane public roadway which would provide four-lane access to the two major traffic arteries, i.e., I-10 Service Road and West Napoleon Avenue, in the area. Thus, whether the Council abused its authority should be viewed in the light of the purpose of the Ordinance and the effect it had on the movement of traffic in the area and not whether its enactment would enhance or its denial would prohibit the construction of the Galleria.
In Favrot v. Jefferson Parish Council, supra, this court affirmed a district court judgment holding invalid the closing of a street. However, that case is distinguishable from the instant case on its facts. *714 Favrot involved an ordinance which closed an existing street and abandoned the right of way without providing for a replacement. The ordinance was enacted notwithstanding the recommendation of the Parish Planning Commissioner and the traffic engineers that the street not be closed because there was no other west access from the subdivision to the major artery in the area, i.e., Severn Avenue. Hence, in Favrot, the trial court and this court concluded the ordinance was invalid because the street was in fact being used and therefore was needed for a public purpose.
To support the contention the streets involved in the instant case were being used and therefore necessary, appellants point to: (1) a petition stating that they used the streets and wanted them to remain open, allegedly signed by 300 persons; (2) the testimony of several people using the streets at the time the Ordinance was adopted and (3) to the fact Mr. Lavelle, Director of Public Works, recommended against adoption of the original Summary Ordinance No. 13168 and made no recommendation at the hearing on the adoption of Summary Ordinance No. 13217.
We note, on the other hand, that the testimony of Mr. Lavelle actually demonstrates the streets were not needed for public purposes. He pointed out that the streets had been blocked off between 1978 and 1983 to alleviate a trash dumping problem. Because there was no development along the remote streets, Lavelle explained it was a likely place for dumping trash. (Vol. 3, pp. 145-146). His statements were corroborated by Cyrus Dufrene, an employee of Lavelle's department, who testified that many derelict automobiles, abandoned there, had been hauled away by his department.
After plans for the Galleria development were announced in 1983, residents of the area pressed for opening of the barricaded streets. Four of plaintiffs' witnesses, who had appeared before the Council and again appeared before the trial court to explain how detrimental the revocation would be, conceded the streets had been closed for many years. See testimony of Jerrie Mitternight, Vol. 2, p. 31; Diane Moore, Vol. 2, p. 40; Edwood Wells, Jr., Vol. 2, p. 61, and Maurice D. Felix, Vol. 2, p. 75. Additionally, these witnesses felt the proposed four-lane roadway, only 150 to the west of the existing streets, would accommodate northbound-southbound traffic as well as had the sections of 36th Street and Metairie Lawn Drive. Thus, when their testimony is considered as a whole, it can be seen the opposition which they voiced was to the Galleria development, not the resubdivision here in question.
Based on the testimony of several Council members stating they had not visited the resubdivided site nor read reports which they had commissioned in conjunction with the construction of the Galleria, counsel for appellants argues the Council acted with incomplete or incorrect information and therefore acted capriciously or arbitrarily in enactment of the Ordinance.
We note the Council members also testified that they consider literally thousands of applications for subdivisions and/or resubdivisions and rely heavily on Parish Department heads or consultants to keep them informed for it would be impossible to thoroughly familiarize themselves with each situation. Additionally, all Parish Department heads, except for Mr. Lavelle, recommended approval of the resubdivision.
Mr. Hugh Ford, Jefferson Parish Planning Director, recommended the resubdivision and testified that in processing a resubdivision request, the proposed future construction on the site is irrelevant. (Vol. 3, pp. 24 and 179.) Parish President, Joseph Yenni, explained that sewerage, drainage and traffic problems are handled at the building permit level. In substance, under its procedures the Parish would not issue building permits unless steps were taken to insure adequate drainage and sewerage capacity and to alleviate traffic congestion. Reports commissioned by the Council do point out the service problems the Galleria development will create, but conclude the problems can be solved and the overall *715 impact of the Galleria development will be beneficial to the Parish and generate a substantial increase in revenue.
Thus, in our view, deciding the issues here as to a resubdivision of the tract, does not, as contended by appellants, require deciding whether the Galleria would be built or whether the Parish can solve the problems which may be created by construction of the Galleria. Such a decision is the function and prerogative of the legislative body.
The area sought to be resubdivided was zoned commercial and there had been extensive hearings and subsequent litigation over decisions of the Parish Zoning Board. The testimony of Mr. Hugh Ford, Planning Director; Mr. Joseph J. Krebs, Chairman and Chief Executive Officer of J.J. Krebs & Sons, an engineering, surveying and planning firm, and Mr. George Cox, Managing General Partner, Woodmont Development, all indicated that in their view the area sought to be resubdivided would develop commercially without the resubdivision and could be more economically and feasibly developed if the streets were relocated and the various lots integrated into a single lot. Additionally, notwithstanding his original recommendation to reject the resubdivision and his subsequent decision to make no recommendation, Mr. Lavelle, Public Works Director, testified that his personal and professional opinion at both Council hearings was that the resubdivision and relocation of the streets would not have a detrimental impact on the neighborhood, but would in fact improve the traffic problem by eliminating dead-end streets and increasing the alternatives for traffic circulation.
The appellees contend that at the time Ordinance No. 16148 was enacted at least the majority of the Council was aware that (1) a landscaped four-lane roadway would replace the abandoned streets which had been closed and used as a trash dump for many years, (2) no property owners would lose ingress and egress to his or her property, (3) the new roadway dedicated to public use would be maintenance free to the Parish, and (4) a permanent servitude would be granted in favor of the public on the new roadway. From our review of the record we believe the record supports that contention. Hence, we cannot say the trial judge's factual conclusion that although the residents might experience some inconvenience the relocation would improve rather than aggravate the general traffic conditions was error; nor can we say he erred in concluding the Parish Council did not act arbitrarily and capriciously in the enactment of Ordinance No. 16148.
We next consider appellants' contention Ordinance No. 16148 is invalid because the properties involved in the exchange were not of equal value.

Value of Property
For the purpose of argument, counsel concedes Ordinance No. 16148 effected an exchanged and relocation, but contends the Council gave more in value than it received; hence, it violated the enabling statute, LSA-R.S. 48:718.
Counsel for appellants points to the testimony of Ms. Marbury Little, a real estate agent who expressed her personal view before the Council and before the trial court that the dedicated rights of way which were exchanged for a four-lane public roadway was valued at one and one-half million dollars and should have been sold for three million dollars and compared this to the $673,000.00 cost, absent asthetics, to construct the four-lane street to support his contention the exchange was not for equal value.
We note that Ms. Little was not qualified as an expert and expressed her views, over the objection of the defendants, as that of a layman. Additionally, she did not set forth a factual base to support her views. For example, she did not know the actual square footage of the streets that were closed and she used a 54 feet width for the streets where in fact they were only 26 feet wide. Also, in our view, she totally lost track of how the Parish acquired the property *716 it gave up and the rights it acquired in the property.
Although a developer may give up fee simple title by the dedication of the street to the Parish, he does so by the requirement of the governing authority so that the Parish may act as the custodian of the public streets in the developed area. Also, by operation of law, if and when the Parish abandons the street, title is transferred to the bordering landowners, who are the successors in title to the landowners who initially made the dedication. Thus, although the Parish may have fee simple title, that title is burdened with the effects created by operation of law. In our view, therefore, since the tract is burdened by the operation of law, the fee simple title which the Parish holds under a situation such as that presented here, is more analagous to ownership of a servitude or right of way for utilities than to a fee simple title. Consequently, it would be error to compare, as Ms. Little and the appellants do, an unburdened fee simple title to the rights given up by the Parish while ignoring the value of the servitude received by the Parish. Although the Parish had fee simple title, that title was burdened with the road servitude.
For those reasons we cannot say that appellants met their burden of proof that the property received by the Parish had a lesser value than the property given up by the Parish in the exchange.
We next consider appellants' contention the trial court erred in failing to adhere to its own Parish Code of Ordinances regulating subdivisions.

Jefferson Parish Code Chapter 33
Appellants contend the Council approved the resubdivision without first requiring (1) the issuance of a developmental permit, (2) the submission of sea level evaluations and base flood elevations, (3) provisions for alleyways and utility easements, and (4) an affidavit regarding building restrictions, all as required by the Parish Subdivision Ordinance or the guidelines issued by the Parish Director of Planning. Although there are serious questions as to whether the Ordinance actually requires these submissions, even if we accepted the argument these were required by the Ordinance, the argument is without merit because (1) the guidelines are without force of law and (2) Section 3324(b) of the Ordinance provides for the Council to waive or modify the requirements of Chapter 33 of the Code of Ordinances, where extraordinary conditions exist which would make it impractical and not feasible to comply with the requirements. Thus, if the Council in fact waived the requirements, it had the authority to do so. Consequently, it was not an abuse of its authority.
We now consider appellants' contention the trial court erred in failing to grant it a suspensive appeal.

Suspensive Appeal
During the course of perfecting his appeal, appellant applied for supervisory writs asking that we reduce the amount of the bond set by the trial court for a suspensive appeal. We denied the application. On application to the supreme court, it vacated the ruling of the trial court setting the amount of a suspensive appeal bond at seven million plus dollars and reinstated an earlier district court judgment setting the bond at $10,000.00. The only articulated reasons given for the court's order was the concurring opinion of Justice Calogero, in which he said:
"I do not, however, consider the appeal a suspensive one inasmuch as the appeal in this case does not suspend the effect of or the execution of an appealable order or judgment. (La.C.C.P. art. 2123)."
In light of the supreme court's previous ruling appearing at 466 So.2d 449 (La. 1985), we cannot say the trial judge erred.

Conclusion
We have carefully reviewed the record, the arguments of counsel, the findings of fact made by the trial judge and his conclusion of law. Based on this, we cannot say the record does not support his findings of *717 fact or that he committed manifest error in applying the applicable law to those facts. Accordingly, we affirm his judgment. All costs are to be borne by the appellants.
AFFIRMED.
NOTES
[1] Appellants' attorney had engaged a court reporter to record and transcribe the Council hearings. However, when appellees sought to introduce the transcription, appellants objected to its introduction due to inaccuracy. Their objections were maintained by the trial court. (See Vol. 3, page 22 of the transcript for the February 27, 1985 hearing). Thus, there is no transcript of the hearing in the record. The evidence or testimony the litigants contend was presented to the Council is a reconstruction of the hearing through the testimony of various witnesses who appeared at the trial court hearing and/or through the introduction of documents.