35 So.2d 860

**CAZ–PERK REALTY, Inc., et al. v. POLICE JURY OF PARISH OF EAST BATON ROUGE et al.**

No. 38739.

March 22, 1948.

Rehearing Denied June 1, 1948.

Dewey J. Sanchez, Dist. Atty., H. Alva Brumfield, Jr., Taylor, Porter, Brooks & Fuller and W. G. Randolph, all of Baton

Rouge (Ada Mott, of Baton Rouge, of counsel), for defendants and appellants.

Borron & Borron and C. C. Bird, Jr., all of Baton Rouge, for plaintiffs and appellees.

FOURNET, Justice.

This case was previously before us on an appeal taken by the Police Jury of East Baton Rouge Parish from a judgment of the lower court granting the plaintiffs, pending a hearing on the merits, a preliminary injunction to prohibit the promulgation and enforcement of an ordinance adopted by the police jury on August 11, 1942, revoking the dedication of and ordering closed that portion of an unnamed street in the Zee Zee Gardens subdivision of Baton Rouge running north from Fiero street between a portion of lot No. 70 and lots Nos. 71, 72, and 73 on the west, and lots Nos. 53 and 54 on the east, and by Mr. and Mrs. Amos K. Gordon, who were prohibited in this same judgment from obstructing any portion of this street. See Caz-Perk Realty, Inc., et al. v. Police Jury of Parish of East Baton Rouge et al., 207 La. 796, 22 So.2d 121. The case is now before us on an appeal taken by these same parties following a trial of the case on the merits and a judgment making the injunction permanent.

The record shows the Caz-Perk corporation created a subdivision known as the Zee Zee Gardens on the outskirts of Baton Rouge many years ago, recording a survey thereof for the purpose of dedicating the streets and roads shown thereon, all of which were then unnamed, for public use. At the time the subdivision was created, the land was sold mostly to Negroes for truck garden purposes, particularly that land bordering on the swampy area to the west of the subdivision. The realty company later dedicated this swampy area to the city for the construction of an artificial lake (now known as City Park Lake), the city agreeing to pave a driveway along its shores. After these improvements were completed the property became so greatly enhanced in value that the colored owners were induced by the increased profits to sell the property acquired by them to white owners who desired to make use of the same for their private residences. The Gordons, who purchased the first of their nine lots in this section in 1927, gradually increased their holdings during the following ten years until they acquired all of the lots on both sides of the street sought to be closed with the exception of lot No. 70. This entire area has been beautifully landscaped by the Gordons and maintained by them as the grounds surrounding their residence, built on a portion of the ground.

While the roadway in controversy was originally laid out as a street on the plat of this subdivision and dedicated for public use by the recordation of the plat, it was never improved or incorporated into

the parish system of roads and, consequently, has never been maintained by that body. The result is that because of its sloping grade and poor drainage it is full of washouts and gullies that render it of no practical value as an avenue for the travel of vehicles. Of necessity, because of lack of care and use, at the time this case was tried the street was overgrown with weeds and grass that covered almost the entire strip. It is situated approximately 300 feet to the east of the drive the city built along the shore of the artificial lake constructed by it out of the swampy area of the subdivision and it parallels this road, following the general contour of the lake. Its direction is north and south. Originally the roadway ran northward from what is now Fiero street (the outlet to lakeshore drive lying on the southern side of the Gordon property) for about 900 feet, but its length was reduced to 600 feet in 1933 when its northern end above Kalurah street (also referred to as Baywood Avenue on some of the maps and particularly the ones more recently revised) was officially closed by the police jury upon the application of the realty company because at that time the company desired to make the property at the northern end of the unnamed street one continuous tract for sale to Catholic sisters for convent purposes. This property has since then been reacquired by the realty company and forms a part of a new subdivision being developed by it known as "Hillsdale."

Kalurah street, running east and west, parallels Fiero street and connects with the street in controversy at the point where it was originally closed at the request of the realty company. Lot No. 70, the only lot on both sides of the unnamed street not owned by the Gordons, lies at the extreme west end of Kalurah street and runs from this street through to the lakeshore drive, with the result that Kalurah street at this point is a dead end since it has never been extended across Lot No. 70 to connect with the lakeshore drive. The only other improved property in the immediate vicinity faces on Kalurah street. There, in 1941, on lot No. 56, surrounded on three sides by the Gordon property, Mr. and Mrs. Joseph C. Baddock (plaintiffs) built a home.

Upon the formal request of the Gordons, filed on July 14, 1942, the Police Jury of East Baton Rouge officially revoked the dedication of and ordered closed the 600 feet remaining of the unnamed roadway under the authority granted it by Act No. 382 of 1938, Section 1 of which provides that " * * * Police Juries and municipal corporations of this State (Parish of Orleans excepted) shall have full power and authority, *in their discretion*, to revoke and set aside the dedication of all roads, streets and alleyways laid out and dedicated to public use within their respective limits, when such roads, streets and alleyways have been abandoned or are no longer needed for public purposes." (Italics ours.)

When the district court of East Baton Rouge Parish issued a preliminary injunction restraining the police jury from enforcing its ordinance closing this roadway upon the petition of The Caz-Perk Realty, Inc., and the Baddocks, these parties, in the appeal taken to this court by the police jury and the Gordons, contended the police jury had no discretion to determine whether a road had actually been abandoned, this being a matter for the courts to finally decide. But we upheld the contention of the appellants, pointing out that the legislature in delegating to the police juries the power to revoke the dedication of these streets and roadways necessarily delegated to them the power "to look into and determine whether the street is an abandoned street or is no longer needed for public purposes," and, continuing, we pointed out that *"it is the well-settled jurisprudence that courts will not interfere with the functions of police juries or other public bodies in the exercise of the discretion vested in them unless such bodies abuse this power by acting capriciously or arbitrarily."* (Italics ours.)

The case was then returned to the lower court and there tried on the merits. The trial judge, being of the opinion "that the road in question is still useful for public purposes," concluded the police jury had acted arbitrarily and capriciously in ordering it closed and perpetuated the preliminary injunction theretofore issued. By this appeal we are now called upon to determine after a review of the entire matter whether the trial judge's conclusion in this respect is well founded.

▇ The record is somewhat voluminous. It consists of 5 volumes, 2 forming the record when the case was here previously and the other 3 the record on the trial on the merits. Also there are innumerable exhibits and documents. After reviewing this record, we feel constrained to say that the police jury did not abuse its discretion in ordering the closing of this street since the overwhelming preponderance of the evidence is that the street was, for all intents and purposes, an abandoned street at the time this action was taken and that it was serving no useful public purpose. Consequently, we do not think the trial judge was justified in interfering with the action taken by the police jury. In so doing he usurped the authority vested in that body by substituting his discretion for that given this political subdivision by the lawmakers. See, Murphy v. Police Jury of St. Mary Parish, 118 La. 401, 410, 42 So. 979, 982; Cruse v. Police Jury of La Salle Parish, 151 La. 1056, 92 So. 679; and Williams v. Police Jury of Concordia Parish, 160 La. 325, 107 So. 126.

▇ As pointed out by this court, "Police juries have both legislative and executive functions to perform, and, being small bodies, close to the people, are vested with large discretion in their sphere of action." Cruse v. Police Jury of La Salle Parish,

supra [151 La. 1056, 92 So. 680]. "And, for the judiciary to meddle in such matters, save for the purpose of preventing fraud, oppression, or gross abuse of power, would be for it to invade the domain of other departments of the government, in violation of the express prohibitions of the Constitution." Murphy v. Police Jury of St. Mary Parish, supra [118 La. 401, 42 So. 982].

■ The appellees contend the closing of this street will greatly inconvenience the Baddocks and the prospective purchasers of property in the new subdivision by depriving them of a direct outlet to lakeshore drive over this unnamed street to Fiero, necessitating that they travel a circuitous route to reach the drive through Fiero or else go through a Negro section in going into Baton Rouge proper; and will depreciate the value of their property because of its "locked in" aspect since it is impractical to extend Kalurah street to the drive across lots 69 and 70 because of the cliff-like elevation of these lots at this point (the feasibility of such a project and the effect on the value of the property was testified to pro and con by a number of real estate experts); as well as block the ingress and egress of lot No. 70 from the western end of Kalurah street. In addition they contend the action of the police jury in closing this street was capricious and arbitrary for this body not only failed to thoroughly investigate the situation and give them a proper hearing, but adopted the ordinance upon the recommendation of the committee appointed to go into the case that amounted to nothing more than a statement that the ordinance should be adopted so that the courts might pass on the question. We do not think these contentions are well founded.

At the time the Gordons filed their formal petition with the police jury for the closing of the street in question this body, because there was opposition, appointed a committee of five, headed by Mr. W. Preston Barnes, Jr., to make an investigation and report its findings at the jury's next regular meeting. Each member of the committeee individually, and the committee as a whole, visited the locality and considered the problem from all angles. And although their conclusion was that the street should be closed, they set aside a specified time just preceding the meeting of the police jury for the opponents to place their objections before the committee. According to Mr. Barnes, these opponents appeared before the committee with counsel and an array of witnesses for the purpose of introducing evidence and conducting a very extended hearing on the matter, very much in the manner they would proceed in presenting a case in court. Being unfamiliar with legal procedure and the law on the subject, counsel for the appellees having made it evident the matter would be taken to the courts if their recommendation that the street be closed was followed by the police jury, Mr. Barnes terminated the hearing and at the meeting immediately following he placed the commit-

tee's recommendation before the entire membership, making at that time the statement attributed to him to the effect that it was apparent the matter would eventually be taken to the courts for decision.

We cannot say that in arriving at the conclusion that the street should be closed this committee did not thoroughly investigate the entire matter and give it mature deliberation. On the contrary, we think the evidence conclusively shows it did. All of the members of the committee testified they made their recommendation only after considering the topography of the property surrounding the street in the light of the ingress and egress to the lakeshore drive, the part played by the street in the road system throughout the subdivision, the problem posed by the dead end of Kalurah street (this gave them little concern since they considered the unnamed street was already closed and Kalurah street, therefore, then in fact a dead end street), width of Kalurah street, and the cost of rebuilding and maintaining the street as contrasted to its ultimate value to all of the property in the vicinity and the inconvenience of those visiting the subdivision. Moreover, as a mere reference to the maps on file in this record clearly show, they found that the closing of the street would not cut off lot 70 from Kalurah street, as claimed by the appellees.

In a supplemental brief counsel for the appellees contend the police jury could not close this roadway under the act of 1938 unless it found as a fact that it had not only been abandoned but was also not needed for public purposes—based on the premise that the word "or" as used in Section 1 of the act must be read in the conjunctive and given the same sense as though the word were actually "and"—and that since they had proved the nonuse of the road was due principally to the obstructions placed at both entrances by the Gordons and not by its abandonment, and further, that the road is needed for public purposes, the jury exceeded its authority in ordering the thoroughfare closed.

While the evidence in the record as to just when the Gordons obstructed these entrances by driving wooden stakes in the ground across them and planting shrubbery there, Mr. Gordon claiming he only drove these stakes there the day after the police jury closed it and others testifying these stakes were there previous to that time, we think the record clearly shows (despite this controversy about the date of the obstruction) that the real cause of the nonuse of the street was its impassable condition.

Conceding for the purposes of this case, without so deciding, that the word "or" as used in Section 1 of Act No. 382 of 1938 must be read in the conjunctive, we do not think this argument can avail the appellees anything here since in adopting its ordinance ordering the street closed the police jury revoked the dedication to public use of "the unnamed, unused and useless road," and ordered such dedication set aside on the ground that the street was "being no longer

*used* or *needed* for public purposes." And viewed in the light of the facts in this case, we do not feel this court would be warranted in overriding this judgment of the police jury. (Italics ours.)

For the reasons assigned, the judgment appealed from is annulled and set aside and it is now ordered, adjudged, and decreed that the suit of the plaintiffs is dismissed at their cost.

O'NIELL, C. J., absent.