470 So.2d 286 (1985)
Thomas B. FAVROT, Jr.,
v.
The JEFFERSON PARISH COUNCIL and the Parish of Jefferson, State of Louisiana.
No. 85-CA-28.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
*287 Daniel A. Post, Jeanne Zeringue Kuebel, Post, Reinhardt & Rougelot, Metairie, for plaintiff/appellee.
Irl R. Silverstein, Gretna, for defendant-appellant.
Before KLIEBERT, BOWES and CURRAULT, JJ.
BOWES, Judge.
The present case is on appeal from a judgment of the district court declaring certain resolutions, which revoked the dedication of a public street, null and void; ordering issuance of a mandatory injunction ordering the Parish of Jefferson to restore the street to public use; and, finally, ordering the purchaser of a portion of the property to reconvey that portion to Jefferson Parish. We affirm.
On February 4, 1981, the Jefferson Parish Council adopted Resolution Number 41409, which resolution directed the Department of Public Works "to barricade Sixth (6th) Street one hundred fifty-five (155') feet east of Hullen Street at the property line of the Viosca Tract and Athania Place Annex Subdivision." On June 10, 1981, the Jefferson Parish Council adopted Ordinance Number 14765, which ordained: "That that portion of Sixth Street between Athania Place Annex Subdivision on the east and North Hullen Street on the west is not necessary for public purposes and is hereby revoked." A technical amendment to this ordinance was adopted by the Jefferson Parish Council on August 5, 1981 under Ordinance Number 14839.
In the ordinances, Sixth Street was resubdivided into the adjacent owners' properties, and sale of the respective portions of the street to the adjacent owners was approved at the appraisal price. Pursuant to these ordinances, a portion of the property in question was sold to Lakeway Center and John C. Yemelos on September 1, 1981.
On April 22, 1984, Thomas B. Favrot, Jr. filed suit on behalf of himself and some 800 other persons seeking a declaratory judgment holding that the ordinances in question were null and void, and further asking the Court to remove all barricades on Sixth Street and to restore the street to permanent public use.
The Parish filed exceptions of no right of action, no cause of action, and prescription, which exceptions were denied by the trial court. Next the plaintiff filed a motion for summary judgment, which was accompanied by several affidavits, exhibits, and memoranda. "Esplanade Square Civic Association, Edenborn-North Hullen Fund, and Citizens of the Severn Street Area, Et Al", filed a petition for intervention, averring that any decision regarding the reopening of Sixth Street would materially and adversely affect them. The intervenors claimed that reopening the street would cause a substantial increase in the volume of traffic, which presented a danger to the area residents and their children. They also claimed that children in the area use the vacant street for leisure time and sports play.
Ultimately, after more exhibits, affidavits, and depositions were filed into the record, all counsel entered into a joint motion to submit the case on the record, rendering the motion for summary judgment moot.
On May 24, 1984, judgment in favor of plaintiffs, declaring ordinances 14765 and 14839 null and void, was entered. The judgment further ordered the Parish, through its president, to remove the barricades and restore the street to public use; and also ordered that the sale of part of the land to Lakeway CenterJohn C. Yemelos, *288 be reversed and reconveyed to the Parish of Jefferson.
The Parish has not appealed, and the intervenors were granted authority to proceed in this appeal against both plaintiff and defendant, under the aegis of La.C. C.P. Art. 1091(3).
The trial judge stated that the issue to be decided in the present case was whether or not the street was no longer needed for public purposes. He specifically found that "Sixth Avenue was and is greatly needed for public use." Although the trial judge relied on La.R.S. 48:701,[1] and we find the applicable statute is R.S. 48:711, the issue remains the same.
R.S. 48:711 states:
§ 711. Authorization to sell or exchange immovable property
Upon a determination by the governing authority of any parish having a population in excess of three hundred twenty-five thousand persons, the parish of Orleans excepted, to the effect that any immovable property owned by the parish or title to which is in the public, including but without limitation, streets, roads and alleys, is no longer needed for public use, the same may be disposed of in the manner hereinafter set forth.
R.S. 48:712 gives those methods:
§ 712. Methods of disposition of property
The said property may be disposed of by one of the following four methods: (1) revocation of the dedication of the property if it consists of a street, road or alley dedicated to public use; (2) sale of any type of property at public auction; (3) sale of any type of property at private sale; or (4) exchange of any type of property for other property of approximately equal value.
The question to be determined, then, is, as the trial judge found, was Sixth Street needed for public use at the time the Council revoked the public dedication? We agree with the conclusions of the trial judge.
According to the statute, the sole criterion for revoking the dedication of a public street is the determination that it is no longer needed for public use. The ordinances stated that such was the case. However, the evidence in the record clearly supports the finding that the street was and still is necessary for access, and that the language in the ordinance was an unsubstantiated attempt to comply with the statutory requirements.
Councilman William Hof, who seconded the ordinances at the Council meeting, stated in his deposition that he voted for the revocation because he thought it would "help the safety of the people that live west of this project." The "project" in question was the Lakeway II building, which was designated to be built partially abutting Sixth Street to North Hullen.
Affidavits from several intervenors, as well as an agreement between Yemelos and the intervenors, show that there was considerable opposition to the building of Lakeway II. The intervenors objected to the commercial rezoning of the property which was necessary to the Lakeway project; a compromise was struck when the civic associations involved agreed to withdraw their opposition to the proposed zoning change in consideration to Yemelos' agreement that a portion of Sixth Street would be closed. Apparently, considering this compromise agreement, the Council *289 voted to rezone the property and close the street.
From the deposition of Mr. Hof:
Q.... You seconded the ordinance, and I assume that you did so because you had reasons; and I would like you to tell me those reasons.
A. I just told you the reasons. For the safety of the residents in the area.
Q. Did you take into consideration the volume of traffic on Sixth Streetwere you concerned with the volume of traffic?
A. Yes. I figured that after Lakeway II was built, and occupied, that it would be a massive traffic flow, as I just stated a minute ago, coming from the west, using Severn Street, you know, since Severn is a four-lane highway; and that would be the only access getting in there.
That was the basic reason.
From the deposition of Robert DeViney, a Parish Councilman:
Q. I realize you were not on the council at the time that the ordinance was passed to close Sixth Street
A. Right.
Q. since you have come back to the council, have you become familiar with the problem, or with the situation of Sixth Street being closed and what background
A. I am familiar with it.
Q. was involved with it. Would you tell us what that is?
A. I thinkwell, let me say this; I didn't make the decision why it was closed, but it was a proper decision because it was based on the fact that commercial development was going to have a negative impact on a neighborhood community, the traffic from that commercial development.
Douglas Robert, a traffic engineer employed by Jefferson Parish, stated that, from a traffic engineering standpoint, it was a mistake to close Sixth Street because there was no other west access from the development back to a major artery, Severn Street. Mr. Bordelon, Robert's supervisor, also apparently recommended that Sixth Street not be closed for the same reason. Robert also stated that he understood the street was closed as "part of a deal that was made in order to get rezoning or a building permit, or something, in order for Lakeway II to be developed." Finally, Robert said that in his opinion the street was needed for public use at the time it was closed, and that western access in the area is still necessary.
The Council was aware of these recommendations made by the traffic engineers. Also Hugh Ford, director of planning for Jefferson Parish, recommended denial of the ordinance which closed Sixth Street, as there was no other access to the west.
Therefore, it is apparent that although the ordinance itself ostensibly found the street not necessary for public use, the opinions of the traffic and planning experts and the preponderance of the evidence do not bear this out. The actual fact of the matter appears to be that the street was closed as part of a compromise between opposing factions. While in and of itself this may have been a viable solution to resolve conflicting interests, it does not meet the statutory requirements of 48:711, upon which the validity of the ordinance depends.
In Miller v. Calcasieu Parish Police Jury, 441 So.2d 306 (La.App. 3rd Cir.1983), the Third Circuit reviewed the applicable jurisprudence:
In Luneau v. Avoyelles Parish Police Jury, 196 So.2d 631 (La.App. 3rd Cir. 1967) the court set forth the following standards related to abandonment of public roads:
"Under the jurisprudence of this state, any interested party may challenge as unreasonable and arbitrary the abandonment of a public roadway by the governing body of a parish or municipality. State ex rel. Torrance v. City of Shreveport, 231 La. 840, 93 So.2d 187 (1957); Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App.2d Cir.1960); Comment, 16 La.L.Rev. 521.

*290 In reviewing the decisions of parish or municipal bodies, however, the courts require that the plaintiff allege and prove that the action of the governing body was capricious or arbitrary or based upon substantially incomplete or incorrect information. Caz-Perk Realty, Inc. v. Police Jury of East Baton Rouge Parish, 213 La. 935, 35 So.2d 860 (1948). Thus the court, at the instance of an interested party, may examine the circumstances surrounding the abandonment of a permanent roadway to determine whether at the time of the governing body's decision to abandon the road the roadway has been abandoned or is no longer needed for public purposes. R.S. 48:701."
The Court then defined the terms "arbitrary" and "capriciously":
Generally, "capriciously" has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a conclusion contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2nd Cir.1960).
We are in agreement with the analysis used by our brothers in the Third Circuit, and, applying this analysis to our situation, we find that the Council, although probably with good intentions, was actually arbitrary and capricious in closing Sixth Street under the circumstances of this case.
Therefore, the judgment of the trial court declaring Resolution No. 41409, Ordinance No. 14765 and Ordinance No. 14839, (which closed Sixth Street) null and void; ordering the Parish to remove all barricades and restore public use; and ordering the reconveyance of the northerly portion of Sixth Street to Jefferson Parish, is affirmed. Appellant will pay all costs of this appeal.
AFFIRMED.
NOTES
[1] § 701. Revocation of dedication; reversion of property

The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto.
Nothing in this Section shall be construed as repealing any of the provisions of special statutes or charters of incorporated municipalities granting the right to close or alter roads or streets.