566 So.2d 149 (1990)
HERO LANDS COMPANY, New City Company, Numa C. Hero, Jr., Samuel B. Katz, Marvin L. Jacobs and Harold D. Wall, Jr.
v.
CITY OF NEW ORLEANS.
No. 89-CA-1757.
Court of Appeal of Louisiana, Fourth Circuit.
July 17, 1990.
Rehearing Denied September 19, 1990.
*150 Charles K. Reasonover, Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, for plaintiffs/appellees.
Joel P. Loefelholz, New Orleans, for defendant/appellee.
Before KLEES, WARD and BECKER, JJ.
BECKER, Judge.
The central issue on appeal in this matter is whether the City Council of New Orleans has the authority to modify the Major Street Plan for the City of New Orleans over the disapproval or non-action of the City Planning Commission. Plaintiffs contend that only the Planning Commission has the authority to modify the Major Street Plan, or alternatively, that if the City Council had authority, it acted arbitrarily and capriciously in passing an ordinance requiring the cul-de-sacing of Lennox Boulevard, a major street on the Major Street Plan for the west bank of New Orleans.
Plaintiffs sued to enjoin the City of New Orleans from enforcing ordinance No. 11738[1] (dated March 19, 1987, and signed by Mayor Barthelemy on April 6, 1987) which provides for the deletion of the intersection of Tullis Drive and Lennox Boulevard in the form of a cul-de-sac. The City Planning Commission voted four to two in favor of cul-de-sacing Lennox Boulevard. However, under the New Orleans Home Rule Charter, a majority vote of the Commission's nine members is required to approve such changes. Therefore, the vote was not sufficient for Commission approval and/or action. The Commission then decided to record its vote, and submit the vote and staff report to the City Council and Mayor for their information and possible action.
Upon receipt of the report from the Commission, the City Council introduced an ordinance providing for the cul-de-sacing of Lennox Boulevard. There was a public hearing at which all sides presented their views. The City Council then voted unanimously to pass the ordinance.
Plaintiffs then filed this suit seeking to have the ordinance declared invalid and enjoin its enforcement. The trial judge, after hearing the testimony and evidence presented, and argument of counsel, found the ordinance to be valid, and dismissed *151 plaintiffs' petition for injunctive relief. The trial court, in its reasons for judgment, concluded that
"the City Council had jurisdiction and authority to pass the ordinance in question.
The planning commission is an appointed authority; the City Council is an elected authority. The Court finds that they have the power and the right to act in amending a major street plan. The absence of statutory authority is of no moment, as this authority is inherent.
The plaintiff contends that the City Council acted arbitrarily and capriciously.
The diversity of opinion is sufficient to remove the decision from the arbitrary and capricious category."
The plaintiffs contend that only the Planning Commission may modify the Major Street Plan. Plaintiffs argue that the major street plan is actually the "master plan" provided for in Article V, Section 5-502 of the New Orleans Home Rule Charter. This provision requires the planning commission to prepare, adopt, and modify
"a Master plan for the physical development of the City, which shall show the general location, extent and character of streets, bridges, waterways, and other public ways; parks and other spaces; public building and structures; public utilities and terminals; whether public or privately owned; public housing, slum clearance, and redevelopment projects and areas, and any other physical public facility, with due regard to the aesthetic characteristics of all public structures." New Orleans Home Rule Charter, Article V, Section 5-502(1).
Plaintiffs are in error in regards to their contention that the major street plan is the same as the "Master plan." The major street plan is simply not the "Master plan." The major street plan is a plat showing the existing and projected future major streets of the City. The major street plan in question does not provide for, or show the development of public buildings and structures, public utilities and terminals, public housing, and/or slum clearance.
The home rule charter does give the planning commission the ability to prepare and recommend to the City Council
"plats, together with revisions and amendments thereof, showing the exact location of lines of recommended new, extended, widened, or narrowed streets, and the estimated time within which the land needed for future street development as shown on the plat would be acquired." New Orleans Home Rule Charter, Article V, Section 5-502(3).
Once the planning commission has made such recommendations, the City Council may adopt, by ordinance, these plats showing planned "street widening and extensions or future streets." New Orleans Home Rule Charter, Article V, Section 5-505. Inherent in this provision is the City Council's authority to modify such a plat to provide for the deletion of an intersection.
Further, Louisiana Constitution article VI, section 5(E) provides that a home rule charter "may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution." See Konrad v. Jefferson Parish Council, 520 So.2d 393 (La.1988); Francis v. Morial, 455 So.2d 1168 (La.1984). Article II, Section 2-101 of the New Orleans Home Rule Charter sets forth the general powers of the governing entity:
"(2) In addition to the foregoing, the City shall have all rights, powers, privileges, and authority herein conferred or herein enlarged, and all rights, powers, privileges and authority whether expressed or implied that may hereafter be granted to a similar corporation by any general law of the State, or that may be necessary or useful to enjoy a home rule charter.
* * * * * *
(4) The City, in addition to the rights, powers, privileges and authority expressly conferred upon it by this Charter, shall have the right, power, privilege and authority to adopt and enforce local police, *152 sanitary and similar regulations, and to do and perform all of the acts pertaining to its local affairs, property and government which are necessary or proper in the legitimate exercise of its corporate power and municipal functions."
The Louisiana Supreme Court has previously held that there are no general or constitutional prohibitions against a home rule entity from closing a public street and alienating it for a private purpose. Coliseum Square Association v. City of New Orleans, 544 So.2d 351 (La.1989). Analogously, we can not find any general or constitutional prohibitions preventing the City Council from modifying the master street plan. Such authority is inherent in its power to regulate the physical development of the city. Further, there have been numerous decisions whereby a governing entity was held to have the authority to close a street, to alienate a roadway, and to withdraw the dedication of a street. See Coliseum Square Association v. City of New Orleans, supra; Bulliard v. Delahoussaye, 481 So.2d 747 (La.App. 3rd Cir. 1985); Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2nd Cir.1960); Caz-Perk Realty, Inc. v. Police Jury of Parish of East Baton Rouge, 213 La. 935, 35 So.2d 860 (1948).
Therefore, we find that the trial court was correct in holding that the City Council did have authority to modify the major street plan. The trial judge was correct when he stated that the planning commission was a recommending body. The planning commission, in such situations, holds hearings, reviews the statistical data, and then provides its recommendations to the City Council for action. Such was accomplished in the case at bar.
Next, we must consider whether the trial court was correct in finding that the City Council's actions were neither capricious nor arbitrary.
In reviewing the decisions of public bodies, the courts will not interfere with the functions of these bodies in the exercise of the discretion vested in them unless such bodies abuse their power by acting capriciously or arbitrarily. Caz-Perk Realty Inc., supra; Coliseum Square Association, supra. "Capriciously" has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence. The word "arbitrarily" implies a disregard of evidence or of the proper weight thereof. Torrance, supra; Favrot v. Jefferson Parish Council, 470 So.2d 286 (La.App. 5th Cir.1985). A determination of whether a public body's actions are arbitrary and capricious must be made in light of the facts of each individual case. Bulliard, supra.
The Louisiana Supreme Court has provided for certain factors which public bodies should consider in determining whether a street should be closed. These are not all the factors which should be considered but do provide a fair standard for such determinations. See Caz-Perk Realty, supra. These factors include (1) the topography of the property surrounding the street in the light of ingress and egress to other streets; (2) the relationship of the street in the road system throughout the subdivision; (3) the problem posed by the "dead end" of the street; (4) the width of the street; (5) the cost of rebuilding and maintaining the street as contrasted to its ultimate value to all of the property in the vicinity; (6) the inconvenience of those visiting the subdivision; and (7) whether the closing of the street would cut off any property owners from access to a street. Caz-Perk Realty, Inc., supra; Torrance, supra.
While, in the present case, the City Council was not faced with closing the entire street, these factors do assist in determining whether the actions of the City Council in closing the intersection of Tullis and Lennox Boulevard were arbitrary and capricious.
Lennox Boulevard runs in a north-south direction on the west bank of the City of New Orleans between General De Gaulle and Tullis Drive. It is situated in a residential area of large and expensive houses between Lakewood Country Club on the east and Brechtel Park on the west. Lennox contains one travel lane and one parking lane in each direction with a forty-six foot wide median. Tullis Drive is a large *153 major east-west arterial thoroughfare running from Behrman Highway to Woodland Drive. With the exception of the part of Tullis closest to Woodland Drive, Tullis Drive is largely undeveloped on either side. In the area of Lennox and Tullis, Tullis is bounded on the north by Lakewood Country Club and Estates, Lennox Boulevard, and Brechtel Park, and on the south by undeveloped real estate owned by the plaintiffs.
In the early 1950's, prior to the development of the area in question, it was envisioned that some time in the future Lennox Boulevard would become a major street with two travel lanes and one parking lane in each direction. The early planners had envisioned lot sizes of 6,700 square feet (zoning RS1) which would have meant small homes and small lots. However, the area developed into an exclusive neighborhood with houses built on two, and sometimes more, lots combined. Park Timbers, Lennox Boulevard, and Lakewood Estates are prime examples of this development.
As this development took place, Tullis Drive was planned and the need for Lennox Boulevard to have two travel lanes in each direction lessened greatly.
During the late 1960'searly 1970's, the concept of a major north-south expressway was developed (Donner Expressway) to connect with a major east-west expressway (La. Alternate Route "A") to provide an expresswaytype corridor running from Orleans Parish south along the Donner Canal to the Jefferson Parish Lane and then west along the Jefferson Parish Line. Lennox Boulevard was to extend southward to the vicinity of the connection between the then proposed Donner Expressway and Alternate State Route "A." However, neither the Donner Expressway nor the State Route "A" have come into existence. Further, there is no plan for such construction within the foreseeable future, and for all intents, such plans are dead.
Today, Lennox Boulevard and the surrounding area is an exclusive residential neighborhood. Lennox Boulevard provides entrances to Brechtel Park and Lakewood Country Club and Estates. Tullis Drive has now been completed and provides access to and from General De Gaulle and Behrman Highway as well as Brechtel Park. Lennox Boulevard is no longer viewed as a "major" street. At most, it would be considered a minor alternate roadway.
Thus, the cul-de-sacing of Lennox Boulevard would not restrict access to any of the public areas and/or thoroughfares. Tullis Drive provides access to property owners situated south of the LennoxTullis intersection.
The residents of the Lennox Boulevard area requested that there be no connection between Lennox Boulevard and Tullis Drive once Tullis was completed. In furtherance of this request, the councilman for the area, the Honorable Mike Early, initiated the process, through a resolution, requesting that the City Planning Commission study whether the LennoxTullis connection was still needed.
The mere fact that a street is being used by the public does not mean that the street is "needed" for public purposes. "Use" and "need" are relative terms and it is the duty of the City Council, after reviewing and weighing the evidence presented, to determine whether any inconvenience resulting from the discontinuance of the present use of the street would outweigh the benefits which would flow from the closure of the street. Coliseum Square Association, supra, 544 So.2d at 360.
Two public hearings were held by the City Planning Commission at which much public input was received. A number of neighborhood associations spoke in favor of the closure. A representative of the plaintiffs also had the opportunity to speak. The Commission staff researched the issue and prepared a report. The report, however, did not support the closure of the intersection. The staff report considered the viability and need of Lennox Boulevard as a possible connection between Orleans and Jefferson Parishes, and Orleans and Plaquemines Parishes. The report also considered the impact the closure would have on Brechtel Park. However, the report did not consider the decrease in property *154 values and quality of life of the surrounding area which would result if Lennox was utilized as a major arterial roadway. The study did not also consider whether there would be any adverse effect on the property abutting Tullis Drive.
After the two public hearings and review of the staff report, the City Planning Commission voted four to two in favor of the closure. The vote being a non-action vote, the Commission decided to record its vote and submit the vote and the staff report to the City Council and Mayor.
The City Council then, chose to act upon the closure of the intersection itself. A public hearing was held before the City Council at which much input was received concerning the closure of the intersection. The then director of the City Planning Commission, Mr. Robert Becker, appeared and spoke in opposition to the closure. Numerous residents of the areas affected also appeared and spoke in favor of the closure.[2] The City Council then voted unanimously to adopt the ordinance requiring the cul-de-sacing of Lennox Boulevard at Tullis Drive. Clearly, there was more than adequate opportunity for all parties to voice their opinions on this matter. The City Council had before it sufficient conflicting information and opinions that its decision can not be said to have been arbitrary and/or capricious.
While it may be this Court's opinion that the City Council's decision was not made with the clearest foresight, we can not say that the trial judge committed manifest error in finding that the City Council did not act arbitrarily and capriciously in passing the ordinance requiring the cul-de-sacing of Lennox Boulevard.
Accordingly, the judgment of the trial court dismissing plaintiffs' petition for injunctive relief, and finding Ordinance No. 11738 of the City of New Orleans valid is hereby affirmed.
AFFIRMED.

APPENDIX

ORDINANCE

(AS AMENDED)

CITY OF NEW ORLEANS
 CITY HALL: March 19, 1987
 CALENDAR NUMBER: 13,945
NO. 11738 MAYOR COUNCIL SERIES
BY: COUNCILMAN EARLY (BY REQUEST)
AN ORDINANCE to delete the proposed connection of Lennox Boulevard to Tullis Drive in the 5th Municipal District of the City of New Orleans from the Major Street Plan; to provide that upon the completion of Tullis Drive, that Lennox Boulevard extending from its intersection with General DeGaulle Drive shall be dead-ended in the form of a cul-de-sac prior to its proposed connection with Tullis Drive; to repeal all conflicting ordinances; and otherwise to provide with respect thereto.
WHEREAS, the City Council by Resolution R-85-430 requested the City Planning Commission to remove the planned connection between Lennox Boulevard and Tullis Drive, thereby revising the City's Major Street Plan; and
WHEREAS, this request was prompted by lawful and legitimate concern from the area residents that connecting Lennox Boulevard to the proposed Tullis Drive would dramatically change the character of Lennox Boulevard and seriously undermine the quality of life for residents of this area; and
WHEREAS, the City Planning Commission, after conducting a study and due deliberation, allowing for public input, did not *155 vote to remove the planned connection between Lennox Boulevard and Tullis Drive, from the Major Street Plan; and
WHEREAS, the study reviewed by the Planning Commission did consider the severe impact on Brechtel Park, it failed to consider the severe impact upon the adjoining neighborhoods, and
WHEREAS, the study reviewed by the Commission was in dispute by the Commission as to the amount of traffic on Behrman Highway, but failed to dispute the present projected count of vehicles of 2,460 on Lennox Boulevard when there are at present only approximately 200 registered vehicles on Lennox Boulevard; and
WHEREAS, it still remains the intent of the City Council and numerous citizens of the West Bank that the connection between Lennox Boulevard and Tullis Drive not be made in the best interest of the residents; and
WHEREAS, the linking of Lennox Boulevard with Tullis Drive will result in a drastic change to the very character of the Lennox Boulevard, Brechtel Park and Lakewood Country Club area transforming a tranquil New Orleans neighborhood setting into a suburan [sic] traffic artery; and
WHEREAS, the existing streets development plans were developed over thirty years ago and have long since become obsolete with the upgrading of Brechtel Park and the development of high quality adjoining neighborhoods such as Park Timbers, Woodgate, Lakewood and Brechtel Park Estates; and
WHEREAS, the planned connection between Tullis Drive and Lennox Boulevard would also affect the property values of a model neighborhood in an already declining property market; and
WHEREAS, the dead-ending of Lennox Boulevard at Tullis Drive would have little or no adverse effect upon the property abutting Tullis Drive after completion of Tullis Drive; and
WHEREAS, after completion of Tullis Drive, adequate access will be provided to all property owners abutting the dead-ending of Lennox Boulevard prior to the proposed connection with Tullis Drive; now; therefore
SECTION 1. THE COUNCIL OF THE CITY OF NEW ORLEANS HEREBY ORDAINS That the proposed connection of Lennox Boulevard to Tullis Drive be deleted from the Major Street Plan, overruling the necessary vote of the City Planning Commission on the 16th day of September 1986, to delete said connection.
SECTION 2. That after completion of Tullis Drive, that Lennox Boulevard be dead-ended in the form of a cul-de-sac.
SECTION 3. That the Mayor, the Chief Administrative Office and the Director of the Department of Streets and the City Planning Commission shall undertake whatever action is necessary to effectuate this ordinance.
SECTION 4. All ordinances or parts of ordinances in conflict herewith are hereby repealed.
SECTION 5. If any provision of this ordinance or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the ordinances which can be given effect without the invalid provision or application, and to this end the provision of this ordinance are severable. ADOPTED BY THE COUNCIL OF THE CITY OF NEW ORLEANS APRIL 2, 1987
 JOSEPH I. GIARRUSSO
 PRESIDENT OF THE COUNCIL
 Delivered to the Major on APRIL 3, 1987
 Approved:
 Disapproved: APRIL 6, 1987
 SIDNEY J. BARTHELEMY
 MAYOR
 Returned by the Mayor
 on APRIL 6, 1987 at 9:20 A.M.
 EMMA J. WILLIAMS
 CLERK OF COUNCIL
*156 WARD, Judge, dissenting.
Undoubtedly the City has no obligation to pave and extend the thoroughfare to Plaquemine Parish, but I believe the City of New Orleans acted arbitrarily and capriciously by blockading streets once open to the public, ignoring the City Planning Committee recommendation.
NOTES
[1] A copy of the ordinance No. 11738 is attached to this opinion in the appendix.
[2] Fifteen neighborhood associations, representing 4,127 families, indicated their support for the closure of the LennoxTullis intersection. These associations included the Aurora Civic Association, Aurora Community Association, Aurora West Civic Association, Aurora Oaks, Bocage Civic Association, Elmwood Civic Association, Lakewood Country Club Association, Lennox Boulevard Homeowners Association, Pakenham Oaks Association, Park Timbers Homeowners Association, River Road Civic Association, Tall Timbers Homeowners Association, Tall Timbers Extension Association, Walnut Bend Civic Association and Woodland Heights Association.