687 So.2d 423 (1996)
Nicholas P. GIAMBELLUCA and Michael J. Giambelluca
v.
The PARISH OF ST. CHARLES, The Lafourche Basin Levee Board, Leander Petit and Sal Saia.
No. 96-CA-364.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1996.
Rehearing Denied December 17, 1996.
Writ Denied February 21, 1997.
*424 R.O. Lewis, Director of Legal Services, Luling, for St. Charles Parish.
Victor E. Bradley, Jr., Norco, for Neal Clulee.
J. Mac Morgan, New Orleans, for Plaintiffs/Appellees.
Before WICKER, SOL GOTHARD and DALEY, JJ.
GOTHARD, Judge.
Plaintiffs, Nicholas and Michael Giambelluca, filed a "Petition for Declaratory Judgment, Injunctive Relief, Mandamus and Right of Passage" against St. Charles Parish seeking a revocation of a parish ordinance which revoked and abandoned a public road. Also named as defendants were, the Lafourche Basin Levee Board, and two adjoining property holders, Leander Petit and Sal Saia.
The record shows that this matter was begun by a suit entitled, "Neal J. Clulee et al v. Michael J. Giambelluca, et al," seeking a declaration from the court that the Morgan Street Extension in Hahnville, Louisiana from the River Road to the Mississippi River had been impliedly dedicated to the public as a public road. The court ruled in Clulee's favor, rendering a judgment on September 4, 1991 declaring the street in question to be a public road.
Subsequently, on May 19, 1992, the St. Charles Parish Council issued ordinance number 92-5-20 revoking and abandoning the Morgan Street Extension as a public road, declaring that the property serves no public interest and no longer constitutes property utilized or needed by the public. On March 12, 1993, Michael and Nicholas Giambelluca filed the instant suit, seeking revocation of ordinance number 92-5-20, preliminary and permanent injunctive relief enjoining the Parish from destroying the levee *425 crossing ramp which forms part of the Morgan Street Extension, and a writ of mandamus pursuant to LSA-C.C.P. art. 3861 et seq., directing the Parish to restore the levee crossing ramp or, in the alternative, to create a right of passage pursuant to LSA-C.C.P. art. 689, et seq. over property owned by defendants, Petit and Saia.
On April 1, 1993, the trial court entered a judgment with written reasons dismissing the suit after a finding that the Parish, pursuant to its Home Rule Charter, had the power to overrule the judicial determination by issuance of the ordinance. That judgment was appealed to this Court. Because we found it improper for the trial court to render a judgment on the merits after only a hearing on a preliminary injunction, we rendered an opinion which set aside the trial court's judgment and issued a preliminary injunction enjoining the Parish from "abandoning or in any way destroying the Morgan Street Extension as a public roadway pending the outcome of this litigation", and remanded the matter to the trial court. Giambelluca v. The Parish of St. Charles, 626 So.2d 740 (La.App. 5 Cir.1993).
Plaintiffs filed a supplemental and amending petition naming Neal Clulee as a defendant. It is alleged in that petition that Clulee purchased a 50% interest in the property owned by Saia.[1] A second supplemental and amending petition was filed adding Betty Foret Petit as defendant. Later, when it was discovered that Mrs. Petit transferred her interest in the property to Gregory Clayton, Mr. Clayton was substituted for Mrs. Petit as a party defendant.
After a trial on the merits, the trial court rendered a judgment declaring the ordinance void and unenforceable in part, and ordering the Parish to rebuild the asphalt levee crossing ramp which formed part of the extension. Specifically, the trial court declared that part of the road "which runs from the River Road (Louisiana Highway 18) across the Mississippi River levee to the river side toe of the Mississippi River levee is a public road and that St. Charles Parish be and is permanently enjoined from revoking and abandoning that portion of the Extension of Morgan Street as a public road". The trial court found that part of the extension which runs from the river side toe of the Mississippi River levee to the Mississippi River not to be a public road and, upheld the ordinance as it applies to that portion of the road. Further, the judgment reserves the issue of damages, including any damages sustained by the Parish for destruction of the ramp by third parties, for a separate trial. St. Charles Parish and Neal Clulee have filed appeals.
Morgan Street intersects River Road. An asphalt ramp, now removed, extended Morgan Street from River Road, over the levee and onto the batture and provided the Giambellucas with access to their property. Beyond the ramp, there is an unpaved extension of the roadway running on the Giambelluca property and continuing to the Mississippi River.
The salient facts are not at issue in this matter. Clulee and Saia own property boarding Morgan Street between the River Road and the levee. Clulee's property also extends onto the batture. Petit's property is across Morgan Street from the Clulee/Saia property. The Giambellucas own batture property which runs from the river side of the levee to the Mississippi River. The Giambelluca property is directly across the levee from the Petit and the Clulee/Saia plots.
The Giambellucas purchased the property in 1975 to use in their construction business as a sand pit and materials yard. When the land was purchased the ramp at issue was in place. It extended over the levee to the toe on the river side. The Giambellucas obtained a permit from the Levee Board to use the ramp and subsequently, asphalted the ramp and built a road on their property which runs from the river side toe of the levee to the river. The Giambellucas used the road in their business.
It is apparent from the record that this is essentially a property dispute between the Giambellucas and Clulee which began in 1989. At that time, Clulee began to use the road in his own business to haul crushed rock *426 brought in on barges on the river. At some point, the Giambellucas constructed a gate on their property blocking the road. That dispute precipitated the suit filed by Clulee in 1990 to have the entire road declared a public road. The Giambellucas argued that the street was private from the river side toe of the levee to the river. As previously stated, Clulee was victorious in that matter and the entire road, which extended across the Giambellucas' batture property to the river, was declared a public road.
When the Parish subsequently abandoned the Morgan Street Extension by the ordinance at issue herein, that portion of the extension which ran from the River Road to the levee was divided between the Clulee/Saia property and the Petit[2] property. Therefore, the area between the River Road and the top of the levee became private property, rather than a public roadway. When the ramp up the levee was destroyed, the Giambellucas, whose property is on the river side of the levee had no access to their property.
The issue on appeal is whether the trial court was correct in ruling in favor of the Giambellucas in revoking and restoring the Morgan Street Extension from the River Road, over the levee to the river side toe, a relatively short distance from the bottom of the river side of the levee. The trial court did not revoke that portion of the ordinance which abandoned the rest of the road, running from the river side toe of the levee to the river. Thus, that part of the road is now private property of the Giambellucas.
The Parish assigns three errors for our review[3]. In the first error, the Parish argues that the trial court erred in ruling that the ordinance is void and unenforceable. In furtherance of that claim, the Parish asserts that it acted within its power in passing the ordinance. The Parish contends that the Morgan Street Extension was never maintained for public use by the Parish, and only became a public street by the court decision in the previous case on September 4, 1991. Further, it argues that the Giambellucas have not made a sufficient showing of serious use of the roadway by the public.
The Parish also argues that the Giambellucas have failed to show that they are now without access to their property. The Parish contends the Giambellucas have an adequate remedy under C.C. art 689 to obtain a right of passage.[4]
The Giambellucas counter those arguments by asserting that the proper remedy to contest the declaration of the court that the Morgan Street Extension is public property, was an appeal from the trial court judgment which made the declaration in 1991. They also argue that the Parish did not follow its own rules in passing the ordinance and that the stated reason for the ordinance was improper.
At trial, the parties stipulated that the extension was in general use by the public until 1992 when the ramp was removed, making the roadway inaccessible. Fritz Miller, who is an employee of Bayou Fleet Company, testified that he has lived in a motor home on the company property, which is located on the batture directly upriver from the Giambelluca property, since 1990. Mr. Miller described the terrain between the Bayou Fleet property and the Giambelluca property. He stated that levee district flood control measures have produced a cement wall, a ditch and two ponds in that area. Because of all of these obstructions, no road exists between the Giambelluca property and the Bayou Fleet property. Mr. Miller further stated that, with the removal of the Morgan Street ramp, the Giambelluca property is no longer accessible by motor vehicle.
Mr. Miller also stated that he witnessed Neal Clulee using a "trackhoe" to rake off the asphalt ramp and push it to one side. After the ramp had been removed, Clulee dug a pit where the ramp had been, rendering *427 the road impassable. Subsequently, the Lafourche Levee District came in and leveled out the pit, restoring the levee.
Mr. Ralph Fortcuberta, Jr., a land surveyor who has surveyed this land numerous times since the dispute in 1990, testified that the Giambelluca property is now inaccessible by motor vehicle. He stated that the closest ramps over the levee after the destruction of the Morgan Street ramp are the Clulee ramp, about 500 feet away and the Bayou Fleet ramp, about 2000 feet away. He also testified that the only way to drive onto the Giambelluca property is to ride on top of the levee from one of those two ramps. He is unaware of any right of way which would give the Giambellucas legal access.
The court also heard testimony from Chris Tregre, St. Charles Parish President. He testified that he has been a life-long resident of Hahnville and is familiar with the Morgan Street area. He stated that he always remembers there being a ramp over the levee at that point, although it was not always covered with asphalt. He recalls that sometime in the 1970's, in response to complaints by residents in the area about the dust caused by trucks coming from the sand pits on the batture, the ramps were covered with asphalt. Because he was not involved in Parish government at that time, he does not know if the ramps were publicly or privately owned. Mr. Tregre first investigated the issue when Clulee asserted the extension of Morgan Street was a public right of way.
Although he was serving on the Parish Council in 1991, Tregre was unaware of the court judgment declaring the road to be a public right of way when it was rendered. When Tregre took office as Parish President in early 1992, he received a copy of the judgment from Clulee. Mr. Tregre's concern is that the road offers new public access to the river, increasing the possibility that the general public will be encouraged to use the batture for recreational activities such as picnicking, swimming and fishing, thereby exposing the Parish to additional liability. Further, Mr. Tregre pointed out that the road which extends from the levee to the river is likely to be washed out every year during the Spring when the river is traditionally high. Thus, the Parish would incur unreasonable costs in maintenance of the road. Mr. Tregre stated that he knows of no other such public road in the Parish. However, he did admit that there are numerous ramps over the levee comparable to the Morgan Street ramp which have not been abandoned by the Parish. Mr. Tregre also admitted that the general public uses the road to the river to fish, and that the Parish trucks use it to get fill and other materials.
Mr. Tregre explained the process used by the Parish in revoking a public street, which usually begins with a request from an adjoining property owner. He stated that the Planning and Zoning Department conducts a review to establish whether the road serves any public purpose or need. That review is used to make recommendations to the Parish Council, which holds a public hearing on the matter. Mr. Tregre testified that the proposed ordinance was published in the official journals two weeks before the public hearing. Because no one spoke in opposition to the passage of the ordinance, it was adopted and he signed the Act of Revocation on May 18, 1992. On cross-examination, Mr. Tregre stated that he could not recall if a planning and zoning review had been done before the Morgan Street Extension revocation ordinance was passed.
Ellis Alexander, a St. Charles Parish councilman, testified that he has resided in St. Charles for most of his 46 years. He is familiar with the Morgan Street area and confirmed that there has always been a ramp over the levee at that point. He also knew that a dirt road ran from the levee to the river, which he used at times to ride his motorcycle. He recalled that Clulee spoke to him and Kevin Friloux, who was the President of the Parish in 1991, about the possibility of revoking the ramp after it was judicially declared public. Mr. Alexander admitted that, although there are many other such ramps on the levee, only the ramp at issue here was revoked. Mr. Alexander stated that he voted in favor of the ordinance because he was concerned about the Parish's liability. The ordinance came about because of a request by Clulee.
*428 Danny Hebert, the Director of Public Works and Wastewater for St. Charles Parish, testified that there are eight factors considered before making a recommendation on the issue of street revocation. Those factors include the following:
1. The topography of the property surrounding the street in light of the ingress and egress to the street.
2. The relationship of the street in the road system throughout the entire subdivision.
3. The problem posed by the potential dead-end configuration of the street if in fact there was one.
4. The width of the street.
5. The cost of rebuilding or maintaining the street as contrasted to its ultimate value to all of the property in the vicinity.
6. The inconvenience for those visiting the subdivision.
7. Whether the closing of the street would cut off any property owners from access to the street.
8. The demand or necessity to keep the street open for public use.
Upon further questioning, Mr. Hebert explained that the seventh factor concerning the access to the street was included because of state law which forbids a Parish from acting to landlock a property. He further provided information to the court on the costs of maintaining various road surfaces and how often these matters are evaluated.
LSA-R.S. 48:701 provides:
The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto.
There is no question that St. Charles Parish has the power to abandon a public road when it is in the interest of the citizens of the Parish. There are no general or constitutional prohibitions against a home rule entity closing a public street and alienating it for a private purpose. Coliseum Square Association v. City of New Orleans, 544 So.2d 351 (La.1989); Hero Lands Co. v. City of New Orleans, 566 So.2d 149 (La.App. 4 Cir. 1990); writ denied, 571 So.2d 647 (La.1990). The authority to abandon a public street is inherent in the power of a municipality to regulate its physical development, and the courts will not interfere in that decision absent an abuse of that power through arbitrary and capricious actions. Caz-Perk Realty, Inc., v. Police Jury of Parish of East Baton Rouge, 213 La. 935, 35 So.2d 860 (La.1948).
In Luneau v. Avoyelles Parish Police Jury, 196 So.2d 631, at 633 (La.App. 3rd Cir.1967), the court set forth the following standards related to abandonment of public roads:
"Under the jurisprudence of this state, any interested party may challenge as unreasonable and arbitrary the abandonment of a public roadway by the governing body of a parish or municipality. State ex rel. Torrance v. City of Shreveport, 231 La. 840, 93 So.2d 187 (1957); Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La. App. 2d Cir.1960); Comment, 16 La.L.Rev. 521. In reviewing the decisions of parish or municipal bodies, however, the courts require that the plaintiff allege and prove that the action of the governing body was capricious or arbitrary or based upon substantially incomplete or incorrect information. Caz-Perk Realty, Inc. v. Police Jury of East Baton Rouge Parish, 213 La. 935, 35 So.2d 860 (1948). Thus the court, at the instance of an interested party, may examine the circumstances surrounding the abandonment of a permanent roadway to determine whether at the time of the governing body's decision to abandon the road the roadway has been abandoned or is no longer needed for public purposes. R.S. 48:701."

*429 . . . . . . .
Generally, "capriciously" has been defined as a conclusion of a commission when the conclusion is announced with no substantial evidence to support it, or a conclusion contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Torrance v. Caddo Parish Police Jury, 119 So.2d 617 (La.App. 2nd Cir.1960).
See also: Miller v. Calcasieu Parish Police Jury, 441 So.2d 306, (La.App. 3 Cir.1983); writ denied, 444 So.2d 121 (La.1984); Favrot v. Jefferson Parish Council, 470 So.2d 286 (La.App. 5 Cir.1985).
In the instant case, the trial court found the Parish to be arbitrary and capricious in its adoption of the revocation ordinance. We agree with the conclusions of the trial judge. There is sufficient evidence to show that the ramp was in public use similar to many other ramps over the levee in St. Charles Parish, which are still in use. Further, there is sufficient evidence to support the Giambellucas' contention that the action has left them without access to their property. The record also shows that the Parish officials knew of, and failed to appeal, the judicial ruling which declared the street a public right of way in 1991. There is no showing that the facts used by the trial judge in making that ruling have changed significantly at the time of the ordinance. It is clear from the record that the street was revoked not because it was no longer in use, but rather because Clulee requested the revocation and the Parish officials were concerned about liability. After reviewing the facts of this case, we believe the trial court correctly restricted its intrusion into the power of the Parish officials by limiting its judgment to the ramp over the levee. Consequently, we affirm that portion of the judgment which nullifies a portion of the revocation ordinance.
In the second assignment the Parish argues that the trial court erred in permanently enjoining the Parish from revoking that part of Morgan Street Extension which runs from the River Road, across the levee to the river side toe. We agree.
The Giambellucas argue that permanent injunctive relief is a proper remedy to prevent the enactment of ordinances which are inconsistent with, or in contravention with, state law. While we agree with the statement of law, we find the circumstances of this case to be different from cases cited in support of that proposition. We certainly agree that injunctive relief is available to prevent the Parish from enforcing the particular ordinance which is the subject of our review. However, there may be a justification in the future, under a separate set of facts, for the Parish to legally revoke the street pursuant to its statutory powers. We are reluctant to impose an injunction to all future ordinances regarding Morgan Street. We believe the ruling by the trial court is an impermissible intrusion into the powers of the Parish officials. Consequently, we amend that part of the judgment which permanently enjoins the Parish from revoking the Morgan Street Extension by limiting the injunction to Ordinance Number 92-5-20.
In the final assignment of error, the Parish argues the trial court erred in ordering the Parish to rebuild the ramp over the levee. The Parish argues that such an action amounts to an assessment of damages, an issue which was not considered in this trial. The Parish further argues the decision whether or not to rebuild a public road is a legislative function and is within the discretion of the local governing board. Thus, it cannot be a subject of mandamus. The Parish also argues such a ruling is a violation of Louisiana Constitution of 1974, Article 12, Section 10, which sets out provisions for judgments against state agencies and political subdivisions and prohibitions against seizure of their property.
It is certain from the record that the ramp has been removed. The Parish argues that Clulee removed the ramp. The Giambellucas argue that, although Clulee removed the ramp, the Parish is responsible since it acted in an arbitrary and capricious manner by adopting the ordinance and giving the land to Clulee. Clulee argues that, if we uphold the order to rebuild the ramp, the Parish should be held liable.
*430 We find the trial court erred in issuing the mandamus ordering the Parish to rebuild the road. A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved may cause injustice. LSA-C.C.P. art. 3862. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. LSA-C.C.P art. 3863. It is not an appropriate procedure where there is an element of discretion left to the public officer. Starlight Homes, Inc. v. Jefferson Parish Council, 93-746 (La.App. 5 Cir. 2/9/94), 632 So.2d 3; writ denied, 637 So.2d 462 (La. 1994). Although the Parish has a ministerial duty to maintain the roads and bridges under its jurisdiction in good repair, the manner in which the work is done and the priority given to the repair of individual roads and bridges are matters which rest within the discretion of the Parish officials.
Further, we find the ruling to be an inappropriate award of damages for arbitrary and capricious action. Those matters were reserved by the trial court for a later trial and are more appropriately considered at that time.
For the foregoing reasons, we reverse that portion of the judgment which orders the Parish to rebuild the ramp, we amend the permanent injunction, limiting its application to Ordinance Number 92-5-20. In all other respects we affirm the trial court and remand for further proceedings.
REVERSED IN PART; AMENDED IN PART; AND AS AMENDED, AFFIRMED. REMANDED.
*431 
NOTES
[1] Mr. Saia is deceased and his estate has been substituted as a party defendant.
[2] In the course of this trial the Petits sold their property by quitclaim deed to Mr. Clayton.
[3] Clulee has adopted the arguments as briefed by St. Charles Parish in assignments of error numbers 1 and 2.
[4] The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion. LSA-C.C. Art 689.