15 So.3d 214 (2009)
Mary Clulee, Wife of/and Neal CLULEE and Homeplace Batture Leasing, Inc.
v.
Shirley J. Rousseau, Wife of/and Nicholas P. GIAMBELLUCA, Marie A. Sunseri, Wife of/and Michael J. Giambelluca, Beverly Construction Company, L.L.C. and Phillip Family, L.L.C.
No. 08-CA-645.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 2009.
*215 Wiley J. Beevers, Raylyn R. Beevers, Steven M. Mauterer, Michael F. Somoza, Beevers and Beevers, L.L.P., Gretna, LA, for Appellees, Mary and Neal Clulee.
Anthony J. Staines, Stephen Mattesky, Aaron K. Rives, Staines and Eppling, Metairie, LA, for Intervenor/Appellant, Bayou Fleet Partnership.
Panel composed of Judge SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
SUSAN M. CHEHARDY, Judge.
This particular litigation is over the ownership of a 25-foot strip of batture land in St. Charles Parish.[1] The property *216 in question is the southern half of the strip of land, which was a road formerly known as the Morgan Street Extension. The former Morgan Street Extension lies between two tracts of land; the Dugazon tract is north of the road and the Rivarde Place is south of the road. To put this litigation into context, it is beneficial to understand the relationship of the parties to the property at issue.
In 1870, Michael Hahn acquired a plantation on the Mississippi River in St. Charles Parish. Two years later, Hahn subdivided the land according to a plat. When the property was subdivided, it included a road that ran from River Road over the levee across the batture to the water's edge. The road came to be known as Morgan Street. The portion of the road that ran across the batture, i.e., from the riverside toe of the levee to the water's edge, is known as the Morgan Street Extension.
In 1872, Hahn sold the parcel south of Morgan Street, which included the batture, to Rivarde. The title to that parcel, which is commonly referred to as the Rivarde Place, reflected that it was bounded on the north by a "continuation of the line of Morgan Street."[2] In 1887, during the administration of Hahn's estate, the sheriff sold the parcel north of Morgan Street, including the batture, to C.T. Dugazon ("Dugazon tract").[3]
In 1975, the Giambellucas acquired the batture portion of the Dugazon tract, which is north of the strip of land in question, to use in their construction business as a sand pit and materials yard. When the Giambellucas purchased the tract, the levee ramp was in place. The ramp traversed the levee from the toe on the road side to the toe on the river side. The Giambellucas obtained a permit from the Levee Board to use the ramp and, subsequently, asphalted the ramp and used the road to access their property from the levee to the river. The road, which the Giambellucas used in their business, was the Morgan Street extension.[4]
In 1981, the Clulees acquired the Rivarde Place, which is south of the property in question. According to the property description, the Clulees' obtained all the land, including batture and levee, bounded on the south by Home Place Plantation, on the east by Sal Saia's property, on the west by the Mississippi River, and on the north by "a continuation of the line of Morgan Street." In 1981, the Clulees sold a one-third interest in that property to the Saias.
In 1989, the Clulees began to use the Morgan Street extension in their business of hauling crushed rock off of barges on the river. The Giambellucas, who disputed the Clulees' right to use the road, constructed a gate on their property to block access to the road.
In 1990, the Clulees filed suit seeking a declaratory judgment that the Morgan Street extension in Hahnville, Louisiana from the River Road to the Mississippi River had been "impliedly" dedicated as a *217 public road, and, therefore, could not be blocked. On September 4, 1991, the trial court declared that the Morgan Street extension was a public road.[5]
Subsequently, on May 19, 1992, at the Clulees' request, the St. Charles Parish Council declared that the Morgan Street extension served no public interest and no longer constituted property utilized or needed by the public. That day, the Council issued ordinance number 92-5-20 revoking and abandoning the Morgan Street Extension as a public road.[6]
On March 12, 1993, the Giambellucas filed suit, seeking revocation of ordinance number 92-5-20. They also wanted injunctive relief to prevent the Parish from destroying the levee-crossing ramp that formed part of the Morgan Street Extension, and a writ of mandamus directing the Parish to restore the levee-crossing ramp or, in the alternative, to create a right of passage over adjoining land.[7] The trial judge dismissed the claims but, on appeal, this Court remanded for a trial of the issues on the merits.
On remand, the trial court declared the St. Charles Parish ordinance void and unenforceable in part. On appeal, this Court set aside St. Charles Parish Ordinance 92-5-20 with regard to Morgan Street from River Road to the levee and the public ramp over the levee.[8] This Court, however, affirmed the revocation of the dedication of the road over the batture or the Morgan Street extension. Id.
When the Giambellucas again tried to assert control over the entire batture road, the Clulees sought a declaratory judgment regarding the ownership of the former Morgan Road extension. Subsequently, the trial court declared that the Clulees owned the southern half of the Morgan Street extension, which abuts their property, and the Giambellucas owned the northern half of the Morgan Street extension, which abutted their property.[9] This Court affirmed that judgment, finding that by operation of law, "the parties each acquired one-half of the [Morgan Street] road bed when the Parish revoked [its] dedication."[10]Clulee v. Giambelluca, 777 So.2d at 1262.
Meanwhile, to satisfy an earlier judgment, Louisiana Materials provoked the sheriffs sale of the Clulees' two-thirds interest in the Rivarde Place on January 27, 1993.[11] On April 15, 1993, Louisiana Materials *218 sold its recently-obtained two-thirds interest in the Rivarde Place to Bayou Fleet Partnership. Therefore, in 1993, Bayou Fleet did have a two-thirds ownership interest in the entire Rivarde tract. The remaining one-third interest in that property was owned by the Saia family.
On February 12, 1996, after a number of clashes with the Saias over property rights, Bayou Fleet petitioned to have the Rivarde Place partitioned by licitation. After the litigation began, Home Place Batture Leasing, Inc. ("Home Place"), through Neal Clulee, purchased the Saias' one-third interest in the Rivarde Place.[12] Thus, in 1996, Home Place Batture Leasing through the Clulees owned one-third of the Rivarde Place and Bayou Fleet owned two-thirds of Rivarde Place.
At trial, the district court judge ordered that the property be partitioned by licitation and sold at public auction by the Sheriff. Home Place appealed that ruling. After careful review of the record, this Court found that the trial judge erred as a matter of law, reversed the judgment, ordered that the property be partitioned in kind, and remanded to the district court for further proceedings.[13]
On May 27, 1999, when the property was partitioned in kind, the Clulees were awarded, pursuant to law, the northernmost one-third of the entire Rivarde Place, which abutted Morgan Road and the former Morgan Road extension. Bayou Fleet was awarded ownership and all its attendant rights to the other two-thirds, or the remaining and southernmost portion, of the Rivarde Place.
On March 22, 2002, the Clulees and Home Place Batture Leasing, Inc. sued the Giambellucas, Beverly Construction C, LLC, and Phillip Family, LLC, for damages for continued trespass onto the Clulees' 25-foot strip of batture land, including conversion of sand from the Clulees' batture land and interference with the Clulees' use and enjoyment of their property. Later that year, on October 16, 2002, Bayou Fleet filed a Motion for Leave to file an Intervention, on the basis that it was also entitled to damages because it still held a two-thirds interest in the Morgan Street extension. In sum, Bayou Fleet argues that it still holds a two-thirds interest in the 25-foot strip of batture land formerly known as the Morgan Street extension because the strip was never named in or added to any property description when the land was transferred after the road was undedicated by the Parish.
On September 18, 2007 at the hearing on Motion for Leave to Intervene, Bayou Fleet introduced evidence, including various Acts of Sale of all or part of Rivarde Place dating back to 1974; the 1999 Judgment of Partition of Rivarde Place; property tax records; a certified copy of St. Charles Parish ordinance 92-5-20 revoking the Morgan Street dedication; and reported opinions of this Court on rights of various parties with respect to Rivarde Place. At that same hearing, the Clulees introduced virtually the same documents, including documents to support the chain of title; property tax records; judgments from the district court and opinions from this Court.
On December 14, 2007, the trial judge dismissed "Bayou Fleet Partnership's Intervention *219 to be declared owner of a two-third [2/3] undivided interest in the Southern twenty-five [25] feet of the property comprising the Morgan Street Extension." Further, the trial judge denied "Bayou Fleet Partnership's request ... that the Court declare a Right of Passage across the plaintiffs' property" ... "as not plead and suitable for adjudication in this intervention proceeding." Furthermore, the trial judge made the following findings of fact:
This case arises out of a property dispute between the intervener, Bayou Fleet Partnership [hereinafter Bayou Fleet], who contends that it owns a two-third [2/3] undivided interest in the southern twenty-five (25) feet of the roadway property referred to as the "Morgan Street Extension," and the plaintiffs, Mary Clulee, Neal Clulee and Home Place Batture Leasing Inc. [hereinafter Mary Clulee, et al], who claim they are the sole owners of the southern twenty-five (25) feet of the Morgan Street Extension because they are the owners of the directly adjacent property; additionally, they claim Bayou Fleet never acquired an interest in the "Morgan Street Extension," since Bayou Fleet's acquisition documents originating from a Sheriffs Sale failed to include a legal description of the "Morgan Street Extension."
Prior to 1992, the Morgan Street Extension was a public road owned and maintained by the Parish of St. Charles, State of Louisiana. The Morgan Street Extension is an unpaved road running east to west over the Mississippi River levee and dead-ending into the Mississippi River. On May 19, 1992, the St. Charles Parish Council adopted an ordinance whereby the Parish revoked and abandoned the Morgan Street Extension. At the time of the revocation, Mary and Neal Clulee together with Salvador Saia owned the property south of the Morgan Street Extension, and the Giambelluca Family owned the property north of the Morgan Street Extension.
On January 27, 1993, the Clulees' interest in the Mississippi River batture property south of the Morgan Street Extension was sold at Sheriffs Sale to Louisiana Materials Co., Inc. (a company related in interest to Intervener). However, the Sheriffs sale to Louisiana Materials Company, Inc did not include the legal description of the property comprising the Morgan Street Extension. Intervener, Bayou Fleet, subsequently acquired Louisiana Materials Co.'s interest in the Mississippi River batture property south of the Morgan Street Extension while Home Place Batture Leasing acquired a one-third [1/3] interest in the property from the heirs of Salvador Saia. Despite numerous transfers of the property adjacent to the Morgan Street Extension, the property comprising the Morgan Street Extension was never included in any legal description on acquisition documents by Intervener.
On June 2, 1999 Intervener Bayou Fleet obtained a Judgment of Partition of the property south of the Morgan Street Extension from the 24th Judicial District Court in Jefferson Parish. The partition of the property resulted in (1) Home Place Batture Leasing obtaining the lot adjacent to the property comprising the Morgan Street Extension and (2) Bayou Fleet obtaining the remaining two [2] lots which do not front on the property comprising the Morgan Street Extension. Following this, on February 18, 2000, the 29th Judicial District Court, Division C, in case number 51,940, entitled Mary Clulee wife of/ and Neal Clulee and Home Place Batture Leasing, Inc., vs. Nicholas P. Giambelluca, *220 Michael J. Giambelluca, and Giambelluca Land & Development Co., Inc., issued a judgment recognizing: (1) Mary and Neal Clulee as the owners of the southern 25 ft. of the property comprising the Morgan Street Extension and (2) Nicholas P. Giambelluca and Michael J. Giambelluca as the owners of the northern twenty-five [25] feet. It is important to note that Bayou Fleet filed a Motion to Intervene prior to the court's ruling in this case (number 51,940 Mary Clulee wife of/ and Neal Clulee and Home Place Batture Leasing, Inc., vs. Nicholas P. Giambelluca, Michael J. Giambelluca, and Giambelluca Land & Development Co., Inc.) alleging Bayou Fleet's ownership interest in the Morgan Street Extension roadway. The trial court denied the Motion to Intervene as untimely. Bayou Fleet filed a Supervisory Writ with the Louisiana 5th[sic] Circuit Court of Appeals which affirmed the lower court's decision.
At trial Bayou Fleet argued that it is entitled to a two-thirds [2/3] ownership interest in the Southern twenty-five [25] feet of the roadway comprising the Morgan Street Extension because: (1) at the time of the Parish's revocation the ownership of the property comprising the Morgan Street Extension "reverted to the then present owner or owners of the land contiguous thereto," (citing Martin v. Fuller, 214 La. 404, 37 So.2d 851 (La.1948)); and (2) Bayou Fleet is the successor in interest, by virtue of chain of title, to the owners of the adjacent property at the time of the Parish's revocation of the Morgan Street Extension. The Court however is not persuaded by Bayou Fleet's suggestion that Martin v. Fuller ... is necessarily dispositive of the case at bar. The Court notes that Bayou Fleet, although a subsequent purchaser of an ownership interest in the adjacent property, was not the "present owner" of an interest in the adjacent property at the time of the public revocation and abandonment of the roadway. Furthermore, to acknowledge Bayou Fleet's ownership interest in the Southern twenty-five (25) feet of the property comprising the Morgan Street Extension, Bayou Fleet's chain of title must necessarily comport with traditional requirements governing transfers of interest in real property, which requires parties to a transfer of real property to provide a legal description of that property. Unfortunately for Bayou Fleet the legal description of the property comprising the Morgan Street Extension was not included in the Sheriffs sale documents or any other ownership transfer document to Bayou Fleet.
Bayou Fleet's request at trial to grant a Louisiana Civil Code Article 689 Right of Passage is denied as not plead and developed for litigation by Bayou Fleet's intervening pleadings in this case. The testimony of Intervener's representative, Mr. Robin Durant, merely asserted that Bayou Fleet's property was landlocked. Neither the intervening pleadings nor the evidence at trial established the LCC [sic] Article 691 and 692 prerequisites for a right of passage (location of road, type of road, construction specifications, etc) and therefore, Bayou Fleet's request that the Court grant a Right of Passage across the property belonging to the plaintiffs, Mary Clulee, et al, must be denied in this litigation. That issue is reserved for future resolution. (Emphasis added).
La. C.C.P. art. 1091 provides, in pertinent part:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action *221 against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiffs demand; or
(3) Opposing both plaintiff and defendant.
To be allowed to intervene, the challenge is two-fold: the intervener must have a justiciable interest in, and a connexity to, the principal action.[14] "[J]usticiable right" as it is used in the context of an intervention as "the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it."[15] The jurisprudence has held that the justiciable right must be "so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervener's rights."[16]
In this case, the trial judge found that Bayou Fleet did not prove that it had a current ownership interest in the former Morgan Street extension necessary to establish a justiciable interest in the Clulees' suit for trespass against the Giambellucas and their successors-in-interest. Upon review, we cannot say that the trial judge was clearly wrong. Pursuant to the 1999 partition sought by Bayou Fleet, the Clulees obtained 100% of the rights particular to the northernmost one-third of the Rivarde Place, which happened to include ownership of the adjacent 25-foot strip formerly known as the Morgan Street extension. Bayou Fleet did not introduce evidence to the contrary. Accordingly, we find that the trial court was correct in refusing to allow Bayou Fleet's intervention.
Bayou Fleet further argues that the trial judge erred in failing to award it a right of passage "across the Clulees' property at a point fronting the Mississippi River in an area not affected by seasonal flooding." The trial judge denied this claim because it was not plead. We agree. Bayou Fleet's Petition for Intervention focused on establishing an ownership right in the batture road to share in any award in favor of the Clulees for trespass by the neighboring landowner.
The trial judge further found that Bayou Fleet had not introduced evidence to establish a right of passage. Upon review, we find that Bayou Fleet did not introduce evidence that it was an enclosed estate or other elements necessary to support burdening its neighboring estate with a servitude. See La. C.C. art 690 et seq. Based on the foregoing, we affirm the trial court's refusal to adjudicate Bayou Fleet's right of passage as well as the trial court's dismissal of Bayou Fleet's Petition for Intervention. Costs of this appeal are taxed solely to Bayou Fleet Partnership.
AFFIRMED.
WICKER, J., dissents in part.
WICKER, J., dissenting in part.
I agree with the majority insofar as the majority affirms that portion of the judgment denying Bayou Fleet Partnership's *222 request that it be granted a right of access across the plaintiffs' property. However, I respectfully dissent from that part of the opinion which affirms the portion of the trial court judgment dismissing Bayou Fleet Partnership's intervention. In my view, the majority errs in affirming the judgment in its entirety.
The majority views the 1999 partition as determinative of the ownership of the disputed tract. The majority concludes that the Clulees, by that judgment, obtained 100% of the rights allotted to that tract, which included ownership of the adjacent 25-foot strip of batture land. I disagree for the reasons that follow.
Bayou Fleet argued it owns a two-thirds undivided ownership interest in the Southern twenty-five feet of the roadway because in 1992 when the Parish revoked public use of the road, the ownership reverted to the present owner of the land that was contiguous to the road. Bayou Fleet argued that it had that ownership interest, as the successor in interest to the owners of the adjacent property at the time of the Parish revocation. The Clulees and Homeplace disagreed because, among other things, there was no act in the chain of title that included a description of the road and the ownership of the roadbed was previously declared as owned by the Giambellucas and the Clulees.
The testimony and evidence at trial, along with prior litigation to which the trial judge took judicial notice, revealed the following:
On May 19, 1992, the St. Charles Parish Council adopted an ordinance whereby the Parish revoked and abandoned the Extension of Morgan Street, which had been a public road. The road ran from La. Highway 18 (River Road) to the Mississippi River. At the time the Parish revoked the road, the Giambellucas owned the property North of the road. The Clulees and Salvador Saia owned the property South of the road, known as the Rivarde Tract. The Clulees owned a two-thirds undivided interest in the Southern property, while Saia owned a one-third undivided interest.
Robin Blair Durant, Bayou Fleet's managing partner, testified that he is an owner of Bayou fleet Partnership. Louisiana Materials Co., Inc. was a family-owned corporation. On February 14, 1989, Louisiana Materials was granted a judgment against several other defendants, including Neal Clulee. As a result of that judgment, in January 1993, the Clulees' undivided two-thirds interest in the Mississippi River batture property South of the Morgan Street Extension was sold at a Sheriffs sale to Louisiana Materials Co. Inc. The Saia family had the other one-third undivided interest in that property. A few months later in 1993, Bayou Fleet purchased from Louisiana Materials the two-thirds undivided interest in the Rivarde Tract.
Mr. Durand testified that Bayou Fleet attempted to reach an agreement with the Saias regarding reimbursement to Bayou Fleet for taxes, and maintenance of the property. No agreement was ever reached and the Saias were not interested in selling their portion or in purchasing Bayou Fleet's portion. As a result of the breakdown in communication, and the failure to resolve the dispute, Bayou Fleet filed suit against the Saias seeking to sell the undivided property at a public auction in order that one person own the property.
But, in 1996, before the suit was tried, Mr. Saia became ill and the Saias sold their undivided one-third interest to Homeplace Batture Leasing, Inc. Neal Clulee, as president of Homeplace, represented Homeplace at the sale transaction. Ultimately, the matter was tried. At the district court level, Bayou Fleet was successful *223 in arguing that the property should be divided by licitation. On appeal, this court reversed and remanded the matter to the district court. Bayou Fleet Partnership v. Saia, 98-306 (La.App. 5 Cir. 2/5/99), 745 So.2d 629, writ denied, 99-0459 (La.4/1/99), 742 So.2d 559.
In that opinion, this court recited the history of the litigation:
On February 12, 1996, Bayou Fleet filed a petition to have the property partitioned by licitation. On May 22, 1996, Home Place Batture Leasing, Inc. (hereinafter Home Place) purchased the Saia family's one-third (1/3) interest in the land for $23,000.00. On June 11, 1996, Home Place intervened in the suit, praying that the property be partitioned in kind. The Saia family was later dismissed from the suit.
98-306 at 2, 745 So.2d at 629.
The court explained:
The trial judge ordered that the property be partitioned by licitation and sold at public auction by the Sheriff, with costs of these proceedings assessed against the gross proceeds of the sale. The trial judge ordered partition by licitation because he concluded that the best use for this property is barge fleeting and that the possibility of Home Place getting the middle lot existed since the selection process must be random. Thus, he concluded that the property could not be conveniently divided and that division would result in a diminution of the property's value.
98-306 at 5, 745 So.2d at 631.
This court reversed the judgment of the trial court, ordered that the property be partitioned in kind, and remanded the matter to the district court for further proceedings. 98-306 at 8, 745 So.2d at 632.
The trial judge then rendered a judgment on June 2, 1999 after conducting a random lot selection process. He divided the lots as A, B, and C. He flipped a coin to determine who would choose first. As a result, Homeplace chose first. Bayou Fleet was declared owner of Lots B and C and Homeplace owner of Lot A as indicated by the attached Appendix. The ownership of the Morgan Street Extension was not addressed in that judgment.
The first time that ownership was addressed was in February 2000, when the 29th Judicial District Court trial judge rendered a declaratory judgment dividing the ownership of the Morgan Street Extension. The court recognized Mary and Neal Clulee as owners of the Southern one-half (25 feet) of the property from the riverside toe of the Mississippi River Levee to the Mississippi river. The court further declared that Nicholas P. Giambelluca and Michael J. Giambelluca were the owners of the Northern one-half (25 feet). The Giambellucas appealed the judgment asserting that they owned the entire roadbed between their batture properties. Clulee v. Giambelluca, 00-1057 (La.App. 5 Cir. 1/23/01), 777 So.2d 1259. This court affirmed the judgment.
Mr. Durant testified that when Bayou Fleet discovered that there was a potential claim for ownership of the road, they attempted to intervene in that suit. However, testimony had been received at that point and the trial judge denied the request to intervene. A supervisory writ was denied by this court without reasons. Clulee v. Giambelluca, 00-108 (La.App. 5 Cir. 2/18/00) (unpublished). According to the appellate opinion, the trial judge rendered judgment declaring ownership on February 18, 2000, the same date as this court's writ denial. Clulee v. Giambelluca, 00-1057 at 7, 777 So.2d at 1263. Thus, it appears that the intervention was untimely filed. In any event, Bayou Fleet was not a party to the suit for a declaratory *224 judgment regarding ownership of the Morgan Street Extension.
Mr. Durant explained that the instant suit was the first opportunity Bayou Fleet had to assert its ownership interest in the road.
At trial, Ms. Clulee, Mr. Clulee's wife, testified she was married to Mr. Clulee at the time they acquired an ownership interest in the Rivarde Tract. Homeplace is a company that is owned by the Clulees. In her opinion, she and her husband asserted an ownership interest in the Morgan Street Extension in litigation involving the Giambellucas on the basis that they were adjacent property owners at the time of the revocation and also because they became the owners following the judicial partition when they were awarded lot A.
Albert S. Cote, a title abstracter, testified as an expert in title examinations and real estate. He performed a title examination of the Morgan Street Extension in 2007. The writ of seizure did not include a legal description of the Morgan Street Extension, which is the bounding piece of property. The sale from Louisiana materials to Bayou Fleet did not include the extension. Only the Rivarde property was described in the Sheriffs sale. The sale from Saia to Homeplace did not mention the extension. It only mentioned the Rivarde property. In the conveyance records, the extension is not legally described anywhere. Before the 1992 revocation, Louisiana Materials had a lien on the Clulees' propertythe Rivarde tract. Mr. Cote, has had experience with revocations of public roads. Sometimes the revoked roads are described in sales and sometimes they are not.
The evidence at trial revealed that although there have been numerous transfers of the Rivarde Tract, which is adjacent to the Morgan Street Extension, the Morgan Street Extension was never included in any legal description on acquisition documents, including documents concerning the Sheriffs sale to Louisiana Materials. Additionally, when the Clulees filed for bankruptcy in 1992 about four months after the Parish's revocation, they did not list among their assets an ownership interest in the Morgan Street Extension.
La. R.S. 48:701 pertinently provides:
The parish governing authorities ... of the state ... may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto[.]
Therefore, at the time of the Parish revocation, the Morgan street Extension reverted to "the then present owner or owners of the land contiguous thereto."
As a result of the revocation, the road again became part and parcel of the property from which it had been originally carved and the ownership then became vested in accordance with the ownership of the property contiguous thereto at the time of the revocation. Martin v. Fuller, 214 La. 404, 422, 37 So.2d 851, 857 (La. 1948).
It is undisputed that at that time, the Clulees, Giambellucas, and Saia owned the contiguous property. The Giambellucas owned the property North of the road while the Clulees and Salvador Saia owned the Rivarde Tract, which was property South of the road. The Clulees owned a two-thirds undivided interest in the *225 Southern property, while Saia owned a one-third undivided interest. Pursuant to R.S. 48:701, the ownership of the road vested as follows: The Giambellucas acquired the Northern twenty-five foot tract and the Clulees together with Saia acquired the Southern twenty-five foot tract. The Clulees acquired a two-thirds interest in the Southern tract with Saia acquiring the remaining one-third interest.
The parties disagree, however, as to whether Bayou Fleet subsequently acquired an interest in the Southern twenty-five feet of the former Morgan Street Extension. The trial judge concluded that since the sale and acquisition documents did not contain a description of the Morgan Street Extension, Bayou Fleet never acquired ownership.
Appellant argues the trial judge erred because the presumption of transfer provided in La. R.S. 9:2981 governs and, therefore, the interest in the abandoned road was transferred along with the Clulees' ownership interest in the Rivarde Tract. I agree that the trial judge erred in failing to apply the presumption.
La. R.S. 9:2981, which was added in 1958, provides for a conclusive presumption of the grant of interest in an abandoned road:
It shall be conclusively presumed that any transfer, grant, sale or mortgage of land and property abutting or contiguous to an abandoned road, street or alley, the dedication of which has been revoked, shall be held, deemed and construed to include all of grantor's or mortgagor's interest in and to said abandoned road, street, or alley, in the absence of any express provision therein particularly excluding the abandoned property therefrom; provided further, however, that no then existing valid servitude or rights of third parties in or on the abandoned property shall be in any manner or to any extent impaired, prejudiced, or otherwise affected by any of the terms and provisions of this Part.
Appellees argue, however, that jurisprudence interpreting a similar provision, La.R.S. 9:2971, does not support a presumption that the Clulees' interest in the abandoned road was ever transferred. Bayou Fleet disagrees.
R.S. 9:2971[1] provides:
It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract, or grant affecting land described as fronting on or bounded by, or as described pursuant to a survey or using a metes and bounds description that shows that it actually fronts on or is bounded by a waterway, canal, highway, road, street, alley, railroad, or other right-of-way, shall be held, deemed and construed to include all of grantor's interest in and under such waterway, canal, highway, road, street, alley, railroad, or other right-of-way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom; provided, that where the grantor at the time of the transfer or other grant holds as owner the title to the fee of the land situated on both sides thereof and makes a transfer or other grant affecting the land situated on only one side thereof, it shall then be conclusively presumed, in the absence of any express provision therein particularly excluding the same therefrom, that the transfer or other such grant thereof shall include the grantor's interest to the center of such waterway, canal, highway, road, street, alley, railroad, or other right-of-way; *226 provided further, however, that no then existing valid right-of-way upon, across or over said property so transferred or conveyed or so presumed to be conveyed and no warranties with respect thereto shall be in any manner or to any extent impaired, prejudiced, or otherwise affected by any of the terms and provisions of this Part or because of the failure of such grantor or transferror to therein make special reference to such right-of-way or to include or exclude same therefrom.
In Crown Zellerbach Corp. v. Heck, 407 So.2d 770, 773-74 (La.App. 1 Cir.1981), a case involving mineral rights, the First Circuit interpreted the phrase "described as fronting on or bounded by" in R.S. 9:2971 and found that the presumption did not apply in that case. In Crown, the property description in the deeds did not describe the property as "fronting on or bounded by" the highway or right-of-way. The court held that the omission evidenced the intent to convey only the property included within the exact and precise limits of the surveyed description. It concluded that a survey that excluded the contiguous land satisfies the express reservation requirement.
Crown interpreted the pre-2003 version of the statute. In 2003, the legislature amended the statute to provide for other means of describing the property.[2] The legislature added: "or as described pursuant to a survey or using a metes and bounds description that shows that it actually fronts on or is bounded by" before the phrase "a waterway, canal, highway, road, street, alley, railroad, or other right-of-way[.]"
All of the subsequent transfers to Louisiana Materials and then to Bayou Fleet contain a metes and bounds description that shows that the Rivarde Tract is bounded by Morgan Street. There is no express provision that particularly excludes the road. Thus, even assuming that R.S. 9:2971 applies to this situation, the presumption applies.
The Clulees also argue that La.R.S. 13:3851 provides that Sheriffs sales are sales per aversionem. As such, Louisiana Materials only acquired the property that was specifically described in the writ of seizure and sale.
La.R.S. 13:3851 pertinently provides:
Whenever a party to an action or proceeding desires to have the sheriff to whom a writ of attachment, sequestration, distringas, fieri facias, or seizure and sale is directed make a constructive seizure of any immovable property, whether vacant or improved, under the provisions of R.S. 13:3851 through 13:3861, the party shall annex to the writ at the time of its issuance, or deliver to the sheriff to whom the writ is directed, an exact and complete description of the immovable property to be seized.
Appellees rely on Cornish v. Kinder Canal Co., 267 So.2d 625, 629 (La.App. 3 Cir.1972), writ denied, 263 La. 624, 268 So.2d 679 (La.1972), application not considered, 263 La. 800, 269 So.2d 248 (La. 1972) for its holding that in a sale of immovable property by certain bounds or limits, the vendee receives all of the land embraced within those limits, and nothing more. But in that case, the court could not rely on the presumption in R.S. 9:2971 because the act was retroactive. 267 So.2d at 631.
Pursuant to R.S. 9:2981, the Sheriffs sale conveyed the additional interest in the *227 Morgan Street Extension to Louisiana Materials because there was no "express provision therein particularly excluding the abandoned property therefrom."
Likewise, Bayou Fleet acquired the Clulees' former two-thirds undivided interest in the Rivarde Tract from Louisiana Materials with no express provision excluding the abandoned property. Therefore, Bayou Fleet rather than the Clulees own an undivided two-thirds interest in the Southern twenty-five feet of the Morgan Street Extension.
I disagree with the majority that the 1999 partition judgment determined ownership of the disputed property. It was not until 2000 that the ownership interest in that property was ever addressed. Although the 2000 judgment declared the Clulees and the Giambellucas to be the owners of the road, Bayou Fleet was not a party to those proceedings and until the instant proceeding has never had its ownership claim considered on the merits. In Law Offices of Robert M. Becnel v. Ancale, 00-295 (La.App. 5 Cir. 9/26/00), 769 So.2d 761, 763-64, this circuit addressed a similar situation. In that case, an attorney had originally intervened to assert an interest in attorney's fees and costs. The court had dismissed the intervention without ruling on the merits. Ancale held that the former dismissal of the intervention could not serve as the basis for maintaining a plea of res judicata in the subsequent Ancale case. 769 So.2d at 764. Therefore, to the extent that appellees rely on the 2000 judgment, that reliance is misplaced.
For these reasons, I respectfully dissent from that portion of the opinion which affirms the judgment dismissing Bayou fleet's intervention. I would reverse that portion of the trial court judgment of December 14, 2007 dismissing Bayou Fleet Partnership's intervention; render judgment declaring that Bayou Fleet Partnership is the owner of an undivided twothirds interest in the Southern twenty-five feet of the property comprising the Morgan Street Extension, and remand this matter for further proceedings.

*228 APPENDIX

NOTES
[1] Batture is the property between the toe of the levee and the low watermark of a navigable water body. Here, the property, which is approximately 23 miles upriver from New Orleans, Louisiana, is between the toe of the levee and the Mississippi River in St. Charles Parish.
[2] Clulee v. Giambelluca, 00-1057 (La.App. 5 Cir. 1/23/01), 777 So.2d 1259, 1260-1261, writ denied, 01-0789 (La.5/4/01), 791 So.2d 660.
[3] Id.
[4] Giambelluca v. Parish of St. Charles, 96-364 (La.App. 5 Cir. 11/14/96), 687 So.2d 423, 425-426, writs denied, 96-3096 (La.2/21/97), 688 So.2d 512; 97-0160 (La.2/21/97), 688 So.2d 513
[5] id.
[6] The parties introduced a certified copy of the revocation ordinance into evidence at trial and the trial court took judicial notice of that ordinance. La. C.E. art. 202(A); Bayou Liberty Ass'n, Inc. v. St. Tammany Parish Council, 05-1228 (La.App. 1 Cir. 6/9/06), 938 So.2d 724, 729(judicial notice is mandatory, even without request, as to ordinances enacted by any political subdivision within the court's territorial jurisdiction, if a certified copy of the ordinance is filed with the clerk of court).
[7] Giambelluca v. The Parish of St. Charles, 626 So.2d 740 (La.App. 5 Cir. 1993).
[8] Giambelluca v. Parish of St. Charles, 96-364 (La.App. 5 Cir. 11/14/96), 687 So.2d 423, writs denied, 96-3096 (La.2/21/97), 688 So.2d 512; 97-0160 (La.2/21/97), 688 So.2d 513.
[9] The trial court ruled on February 18, 2000.
[10] Clulee v. Giambelluca, 111 So.2d at 1262. The Louisiana Supreme Court denied writs. Clulee v. Giambelluca, 01-0789 (La.5/4/01), 791 So.2d 660. That judgment was final when the delay for rehearing expired, which was well before the instant action was instituted.
[11] In 1989, Louisiana Materials, Co., Inc. sued on an open account and the Clulees, among others, were cast in judgment for $39,434.41 plus interest, costs, and attorney fees. The Sheriff's Sale of the Clulees' interest in Rivarde Place was recorded on January 29, 1993.
[12] On June 11, 1996, Home Place intervened in Bayou Fleet's suit, praying that the property be partitioned in kind. Bayou Fleet Partnership v. Saia, 98-306 (La.App. 5 Cir. 2/5/99), 745 So.2d 629, 629-632. The Saia family was later dismissed from the suit.
[13] Bayou Fleet Partnership v. Saia, 98-306 (La.App. 5 Cir. 2/5/99), 745 So.2d 629, 629-632, writ denied, 99-459 (La.4/1/99), 742 So.2d 559.
[14] Livingston Downs Racing Association, Inc. v. State, Through Edwards, 96-1988 (La.App. 1 Cir. 9/23/97) 700 So.2d 1021, 1023.
[15] Amoco Production Company v. Columbia Gas Transmission Corporation, 455 So.2d 1260, 1264 (La.App. 4 Cir.), writs denied, 459 So.2d 542 (La. 1984), 459 So.2d 543 (La. 1984).
[16] Livingston Downs Racing Association, Inc. v. State, Through Edwards, 700 So.2d at 1024.
[1] Added by Acts 1956, No. 555, § 1. Amended by Acts 2003, No. 723, § 1.
[2] As amended by Acts 2003, No. 723, § 1.